JOHN N. GLIDDEN ET AL. V. FREEMAN NORVELL.

*General demurrer—Equitable jurisdiction for value—Verification of injunction bill.*

Defects of form in a bill in equity cannot be taken advantage of by general demurrer.

The failure to allege that the demand in controversy does not exceed one hundred dollars, will be regarded as a matter of form, where it

appears the debtor has secured it by turning out 1500 tons of No. 1 iron ore.

The failure to verify an injunction bill is of no importance except on the motion for injunction.

A bill which shows, however imperfectly, that complainant has had turned out to him a quantity of No. 1 iron ore, and that an assignee of the debtor has possession of it, and is mixing it with ore of inferior quality and shipping it, makes out an equitable case to which a general demurrer will not lie.

A party in such a case cannot be turned over to a suit at law to recover damages from the wrong-doer, even though he may be solvent.

Appeal from Baraga. Submitted June 17. Decided June 23.

BILL to enforce a lien on ore, and to enjoin defendant from mingling other ores with that on which the lien was placed, and from selling it. Dismissed on demurrer. Complainants appeal. Reversed.

*F. O. Clark* for complainants. A mortgager of goods may be restrained from removing them beyond the mortgagee's reach, or from placing them where they cannot be taken in satisfaction of the debt: High on Inj. § 323; *Clagett v. Salmon* 5 Gill & J. 314. A general demurrer is good only when it appears on the face of the bill that the complainant has no equity: Story's Eq. Pl. § 455. Demurrer must be special for any cause but want of equity: Id.; Mitf. Pl. 213–4. A general demurrer for want of equity cannot be sustained unless no discovery or proof properly called for by the bill or founded on its allegations can bring the subject matter within equitable cognizance: *Clark v. Davis* Har. Ch. 235; *Bleeker v. Bingham* 3 Paige 246. General demurrer will not lie if any relief is warranted by the bill: *Hoffman v. Ross* 25 Mich. 175; *Hawkins v. Clermont* 15 Mich. 513.

*John Q. Adams* and *G. W. Hayden* for defendant.

COOLEY, J. In the court of chancery a general demurrer to the bill of complaint in this cause was sustained and the

bill dismissed. Whether equities are shown by the bill is therefore the only question here.

The complainants are partners in business at Cleveland, Ohio, under the firm name of Glidden & Eells. The bill alleges that during the year 1877 they made large advances to the Spur Mountain Iron Mining Company, a corporation doing business in the county of Baraga, and said company was on the 19th day of December, 1877, indebted to complainanants in

"the sum of $24,000, as near as may be; that for the purpose of further securing said indebtedness to your orators said Spur Mountain Iron Mining Company, through its general manager Freeman Norvell, gave a bill of sale or lien upon fifteen hundred tons of iron ore of standard quality, meaning by that number one ore—the product of the mine of said Spur Mountain Iron Mining Company; said ore being in stock pile at said mine in Baraga county, Michigan; and upon said 19th day of December said Spur Mountain Iron Mining Company gave to your orators an instrument in writing, as evidence of their lien upon said ore," "said writing being as follows:

'DETROIT, MICH., Dec. 19th, 1877.

'This certifies that we now hold in stock pile at Spur Mine, Lake Superior, Mich., subject to the order of Glidden & Eells fifteen hundred gross tons of iron ore of standard quality, the product of the mine of this company known as the Spur Mine. Delivery to be made on the order of Glidden & Eells indorsed hereon, and the return of this receipt.

'F. NORVELL, General Manager.'

"That together with said certificate of lien above was received a letter from the said Freeman Norvell," "as follows:

'SPUR MOUNTAIN IRON MINING COMPANY,
GENERAL MANAGER'S OFFICE,
92 GRISWOLD STREET, DETROIT, December 20, 1877.

*Glidden & Eells, Cleveland, Ohio.*

GENTS: Inclosed find certificate of fifteen hundred tons of ore in stock pile at the mine sent by you for me to sign to add to the security you hold for advances made to us this season. Said ore to be subject to your order to the extent of your lien.    Very truly yours,

F. NORVELL, General Manager.'

"That said Spur Mountain Iron Company became insolvent, and upon the twenty-first day of February, 1878, made a general assignment to Freeman Norvell for the benefit of creditors.

"That soon after the making of said assignment said Freeman Norvell, acting as assignee under said assignment, took possession of all the property of said Mining Company at the mine in said Baraga county, together with the ore held by your orators as above stated, and continued to hold the same undisturbed until on or about the 12th day of May, 1879, when as your orators are informed and believe, said Freeman Norvell, who resides at Detroit, Michigan, directed James Wilson, who was left in charge of all of said property at said mine as the agent of said Freeman Norvell, assignee, to mix the standard number one ore, which had so been turned over to your orator as security, with number two ore, and to ship the said ore so mixed as inferior quality, and for the purpose of defrauding your orators and depriving them of their security."

The bill further alleges that said Wilson has proceeded to execute such directions of said Norvell; that the whole amount of the ore so turned out to complainants except about six hundred tons, has been already shipped from the mine; that a large amount of it is now in the hands of the Marquette, Houghton & Ontonagon Railroad Company; that if the same is delivered to said Norvell by said railroad company complainants will be defrauded of their security as they believe and that said Spur Mountain Iron Mining Company is bankrupt, and will pay little or nothing to its creditors as complainants believe.

The bill prays that Norvell be enjoined from mixing any more of the ores with others of an inferior quality, and from shipping any of the same without complainants' assent, and from removing any of them from the possession of the railroad company; that an account may be taken of the amount due to complainants, and the ores sold to satisfy the same, etc.

As all that is material in the bill is above given, it will readily be perceived that it is, as a pleading, exceedingly imperfect, indefinite and uncertain; and it is not surprising that it was made the subject of a demurrer. It gives no

account of the indebtedness of the mining company to complainants except as it states the amount, how it is evidenced, the time or times when it came due or will come due. It assumes that other securities exist, but it does not state what they are, or their amount, or value, and it does not even allege that anything is now owing to them, except indirectly as it asserts the danger of their being defrauded. No doubt a special demurrer pointing out these and some other defects must have been sustained; but the question now is whether a general demurrer will reach them. A general demurrer challenges the equity of the case made by the bill, and must be overruled if a case for equitable relief is set out, however imperfectly: *Clark v. Davis* Har. Ch. 227; *Hoffman v. Ross* 25 Mich. 175.

The specific objections pointed out on the hearing are:

1. That the bill does not show an indebtedness to any specified amount, at the time the bill is filed, and therefore does not show equitable jurisdiction; it does not show that previous securities have failed to satisfy the debt, or that the pretended security set out in the bill is still unsettled or in existence. So far as the bill is uncertain in these particulars it is susceptible of amendment. No doubt the bill should have shown an interest to an amount sufficient to give the court jurisdiction; but on general demurrer we will not assume that a debt to secure which the debtor turned out fifteen hundred tons of number one iron ore, was not over one hundred dollars.

2. That Norvell's authority to turn out the ore to complainants does not appear; that the instrument turning it out does not purport to give a lien; that as a chattel mortgage it would be void for uncertainty in description, and for want of filing or of a change of possession of the property. But the allegation that the company by Norvell its general agent, executed the paper is a sufficient allegation of his authority (*Regents of University v. Detroit Young Men's Society* 12 Mich. 138); and the paper writing does not purport to be a chattel mortgage, but a setting aside of certain property for complainants; to be subject to their order. The fact that it

was thus set aside as security appears by the contemporaneous letter. When any one questions its good faith, it will be time to inquire into it. There is no defect in the description of property, and nothing on the face of the papers indicates that there would be or could be difficulty in identification.

3. That complainants have an adequate remedy at law. There is no merit in this objection. A court of law could not enjoin the mixing of ores, or the transportation of the property beyond its jurisdiction. Even if all the parties were responsible, complainants could not be required to stand helplessly by while the property turned out to them is carried off, and trust to the chances of receiving its value.

4. That the bill is not verified. In fact it appears to have been sworn to in another State, and the official character of the person administering the oath is not shown. But a verification is only important for the purposes of a motion for an injunction, and any defect in the showing on oath may be remedied when that motion is made.

The decree dismissing the bill must be reversed and the cause remanded for further proceedings.

The other Justices concurred.