## Asa Smith v. John Greenop.

*Replevin—Common law lien—Claimant must retain possession, which should be continuous from owner of property—Demand for security from owner is inconsistent with claim of lien—Change of possession, under How. Stat. § 6193, must be open, visible and substantial—Of bulky articles—Designation should be clear and unequivocal—Doubts solved in favor of purchaser or creditor.*

1. It is the duty of the claimant of a common-law lien upon property, to retain its possession, as far as the nature of the articles will permit,

and in order to protect innocent third persons dealing with the owner of the property in relation thereto, there should be a continuous possession-from such owner to claimant; and the change should be such as may be observed by such third persons.

2. A demand by such claimant, upon the owner of the property, made after his lien should have attached according to his testimony, to secure him for his debt, is inconsistent with his claim of a lien, and shows that his own understanding was that he had no lien.

3. The change of possession required by How. Stat. § 6193, must be an open, visible and substantial one, and such as to give notice to the public that there has been an actual change of interest or ownership.

4. Where the property is of a bulky character, there should be such a clear and unequivocal designation that creditors or subsequent purchasers cannot be misled, or in doubt as to the nature of the transaction; and where doubts exist they will be solved in favor of the purchaser or creditor, and against the mortgagee.

5. In this case, upon plaintiff's own showing, there was no such delivery and change of possession as the statute requires.

Error to Mecosta. (Fuller, J.) Argued February 3, 1886. Decided February 10, 1886.

Replevin. Defendant brings error. Affirmed. The facts are stated in the opinion.

*Michael Brown,* for appellant :

Defendant had a lien on the lumber for his interest in its manufacture unless waived : *Comstock v. McCracken,* 53 Mich. 123 ; Wait's Actions and Defences, vol. 3, p. 598, and the question of waiver is one of intent : *Hibernia Ins. Co. v. O'Connor,* 29 Mich. 241, and should have been submitted to the jury. All the delivery was made and possession taken, of which the property was susceptible, and this is sufficient under How. Stat. § 6190 ; *Webster v. Anderson,* 42 Mich. 554 ; *Carpenter v. Graham,* Id. 191. The whole contract between defendant and Tincate was by parol, and it was the province of the jury to pass upon it : *McKenzie v. Sykes,* 47 Mich. 294. The effect of the charge of the court was to direct a verdict for the plaintiff, which was error : *Marcott v. M. H. & O. R. R. Co.,* 47 Mich. 1 ; *Demill v. Moffat,* 45 Mich. 410.

*Frank Dumon*, for plaintiff:

The voluntary surrender of the lumber to Tincate destroyed the lien of defendant, and it could not be recovered by resuming possession of the property : *Au Sable Boom Co. v. Sanborn*, 36 Mich. 363, 364 ; *Colwell v. Keystone Iron Co.*, Id. 51 ; *McMaster v. Merrick*, 41 Mich. 505, 507 ; *McFarland v. Wheeler*, 26 Wend. 467 ; Parsons on Contracts, vol. 3 [5th ed.] 238. In Wisconsin the courts hold that where a lien is given by law, a voluntary surrender of the possession of the property is deemed a waiver : *Smith v. Scott*, 31 Wis. 421 ; *Kimball v. Hildreth*, 8 Allen, 168 ; *Brackett v. Hayden*, 15 Me. 347 ; *Danforth v. Pratt*, 42 Me. 50 ; *Gardet v. Belnap*, 1 Cal. 399 ; *Bailey v. Quint*, 22 Vt. 474 ; *Dixon v. Buck*, 42 Barb. 70. The question of the tendency of evidence to prove or disprove a certain fact, or whether there is *any evidence* in the case tending to prove or disprove it, is a question of law, and should be decided by the court : *Druse v. Wheeler*, 26 Mich. 196. If defendant claims under the alleged agreement made in presence of McLellan, whereby the lumber was turned over to defendant as security for the debt, the change of possession should have been actual and continuous : How. Stat. § 6193 ; *Doyle v. Stevens*, 4 Mich. 93 ; *Sheldon v. Warner*, 26 Mich. 408 ; *Cooper v. Brock*, 41 Mich. 491 ; *Anderson v. Brenneman*, 44 Mich. 200 ; *Waite v. Mathews*, 50 Mich. 393 ; *Talcott v. Crippen*, 52 Mich. 633 ; and what this possession should be, is a question for the jury under proper instructions from the court : *Anderson v. Brenneman*, 44 Mich. 202.

CHAMPLIN, J. One Greenop owned a saw-mill in the town of Colfax, Mecosta county, Michigan. In the forepart of the year 1884, one Tincate drew some saw-logs to the saw-mill, and made an agreement with Greenop, and one Palmer, who was a sawyer, and was sawing logs at the mill by the thousand, that they should saw his logs into lumber for two dollars a thousand feet, one dollar and twenty-five cents to be paid to Palmer for sawing, and seventy-five cents to be paid to Greenop for the use of the mill. Palmer sawed 107,000 feet, for which Tincate paid him at the agreed price, and also paid Greenop for the use of the mill, except $18. After this, Palmer sawed 54,000 feet, for which Tincate paid him for sawing, but did not pay Greenop for the use of the mill.

It was also part of the agreement that Tincate should take the lumber, as it was sawed, from the tail of the mill, which he did, and piled it upon the right of way of the Detroit, Lansing & Northern Railroad Company.

On July 24, 1884, Tincate executed a chattel mortgage upon the 54,000 feet of lumber so piled, which was duly filed, and was afterwards foreclosed, and the lumber sold to Messrs. Hood & Ryan. No question is made as to the validity of this mortgage, or of the regularity of the foreclosure. Hood & Ryan sold the lumber to plaintiff, who commenced to remove the lumber, but was prevented by Greenop, who claimed to have the right to the possession of the lumber under a lien for the amount owing him for the use of the mill in sawing the lumber, and thereupon plaintiff brought an action of replevin.

Greenop claimed, and gave testimony tending to prove, that, under an arrangement with the railroad company, he had the exclusive right to occupy the right of way where the lumber was piled, and that Tincate piled the lumber there at his request; that in August, 1884, he gave permission to Tincate to remove one car-load of lumber, and about the fifteenth of July, 1884, he asked Tincate to secure him for what he owed him, and would owe him, for sawing this lumber; that Tincate replied that he (Greenop) had possession of the lumber, and he would turn it over to him then to secure him; that as it was manufactured, the lumber was piled on the right of way mentioned, and had never been moved from that place.

The plaintiff produced testimony tending to show that Tincate did not pile the lumber upon the right of way at Greenop's request, but of his own volition, for the purpose of convenience of shipping on the cars; that he had asked no permission to ship lumber, and had made no agreement to secure Greenop for the use of the mill, and had not given him any possession of the lumber; that he took the lumber into his possession from the mill, and piled it on the right of way; that he had the right to pile it where he chose, and had the right to sell or ship the lumber without consulting defendant.

Under the testimony, defendant claimed a common-law lien

upon the lumber for the use of the mill in sawing the lumber; and also a lien under the agreement made with Tincate in July.

The errors alleged, four in number, are based on the charge of the court, and are as follows:

The court erred in charging the jury as follows:

" (1). If you find that Mr. Tincate was allowed to take the lumber, and remove it wherever he saw fit, and he had a right to put it on his land, or on the land of anybody else, but it was put on land over which Mr. Greenop had control, but under no arrangement with Mr. Greenop that it should be put there, so that he might retain possession or anything of that kind, but with Mr. Tincate, it was optional for him to put it there or somewhere else. If you find that to be the fact, there would no lien attach, because it would be entirely abandoned.

" (2). There is no testimony tending to show there was anything said whatever; but there is testimony tending to show Mr. Tincate had a right to take the lumber and remove it if he saw fit, and that he put it on the land over which Mr. Greenop had control, or the railroad right of way. If you find that he did have such a lien, and the parties allowed him to put it there, then no lien attached.

" (3). There is another question, gentlemen: Was there such a possession? If what took place, or if what is claimed took place there did actually take place, as stated by Greenop and McLellan; if all was done that they claim was done, and it was the identical lumber in question they pointed out upon which Tincate said Greenop should have that security, —then the next question is, was there a change of possession? If that took place, and took place prior to the giving of the mortgage and filing it, it was the duty of Greenop to retain such possession, and to retain it so that a person going there to buy would have some notice that somebody made such a claim and had some rights there. For instance, if he had it in an inclosure of land which he owned or had control of, or had it inclosed and fastened up, that would be notice that somebody claimed rights there. If he had a notice stuck up on a pile of lumber or nailed up, or anything tending to show he claimed some rights there, then it would be the duty of whoever was going to buy the lumber to inquire into it, if he had anything to indicate another party claimed an interest there.

It is the duty of a person claiming an interest in personal

property by a lien upon it, to retain possession in some way; in other words, it is necessary, under our statute, in order to create a lien, in order to avoid fraud against an innocent purchaser or mortgagee, that there should be a continuous possession from the person giving such lien to the one receiving it; and that the change should be such a one as might be observed by any one who is interested in such change of possession, as the property is susceptible of.

"(4). But if you should find that not to be a fact, as claimed by Greenop that he took and retained it, and no notice whatever was given, so a person passing along there or going to examine the lumber would have no means of knowing of the possession of the property, then you should find for the plaintiff. On the other hand, if you find to the contrary, your verdict should be for the defendant."

Counsel claims that the court, in his charge to the jury, took the case from them, so far as the case of the defendant is concerned. Argument for defendant is, that the court told the jury there was no testimony tending to show that there was anything said about a lien, but that the testimony tended to show that Tincate had a right to take the lumber, and remove it if he saw fit; and if the jury should find that Tincate did pile the lumber upon the right of way of the Detroit, Lansing & Northern Railroad, no lien attached; that the defendant owned the mill, and also the land where the lumber was piled, for the purpose, at least, of piling the lumber thereon; but that the court seemed to be of the impression that it was necessary to make some kind of agreement to permit Tincate to take hold of the lumber at the tail of the mill, and move it to the defendant's piling ground, in order to save the lien for manufacturing; that such might have been the case if the lumber had been delivered by the defendant to Tincate to be removed to his (Tincate's) own piling ground, but that in this case it went into defendant's hands, as a mere laborer, for the purpose of being piled upon land of which the defendant had exclusive control; that the question is one of intent, and should have been submitted to the jury.

We do not think that the charge, taken as a whole, is open to the construction placed upon it by defendant's counsel.

The judge told the jury that if they found that, at the time this lumber was passed out of the mill, and if removed by Mr. Tincate, as the testimony showed (and about which there was no dispute); if they believed, according to the evidence, that the lien should attach to the lumber, or that these parties understood it should attach to the lumber, and treated it in that way,—then there would be a lien. And, returning to the subject at the close of his charge, the court further instructed the jury:

"What I understood by that is this: If Tincate, when he was authorized to remove the lumber from the mill after sawing it, as his testimony shows that he was, and authorized to take it wherever he saw fit, either upon Greenop's land or anywhere else, then the lien would be lost, because it would give him sole control and possession of the lumber. But if it was understood that he should put it upon Greenop's land, or land over which he had control—the railroad right of way, which Greenop had a right to use—if the parties understood it was to be put there because Greenop had control of it, and thereby not releasing the lien, but retaining it virtually in his possession until the lien was paid to Greenop and Palmer—Palmer in the first place being entitled to a lien for two dollars; seventy-five cents being understood to be under agreement—if the parties so understood it, I say there would a lien attach.

But if they allowed him to take the lumber wherever he saw fit, irrespective of whatever land he should put it on, but he put it on this land over which Greenop had control, but it was in Greenop's possession simply because it was on land over which Greenop had control. unless it was put there for the purpose of remaining in his possession, and was so understood by both parties; if Greenop had a lumber-yard fenced in, and the lumber had been piled out on the yard by himself, and it was understood by Tincate that he had no right to take it any further, and he did not attempt to take it any further than right out there on the mill-yard, and was to be still in Greenop's possession, because it was put on the premises over which he had entire control. But the main question is whether it was Tincate's right to take the lumber, and take it away from the mill, or was to leave it there until the saw-bill was paid.

I think there is testimony in the case tending to show that Tincate had a right to take the lumber where he had a

mind to. If you find that to be so, this question of common-law lien, irrespective of this second agreement, would be entirely disposed of. It would be no lien at all if he had a right to take the lumber wherever he saw fit."

We think the court's charge was applicable to the testimony given in the cause, and stated substantially the law affecting the claim of the defendant under a common-law lien. It was much more favorable than he had a right to have, under his own testimony in the case; for it would not have been error, under his own testimony, for the court to have instructed the jury that the defendant had no common-law lien. Defendant had proved that Tincate was to take the lumber manufactured from his logs, at the tail of the mill. Here was a parting with the possession in the first instance after the manufacture; but defendant's own testimony showed that his own understanding was that he had no lien, for he testifies that in July he asked Tincate to secure him for what he owed him for sawing this lumber, and that Tincate said he would turn it all over to him then, to secure him. This is inconsistent with the claim that he had at that time a lien on the lumber for the sawing.

But the defendant claims that he held this lumber as security for what Tincate owed him; and he bases this claim upon his testimony, and that of McLellan, as to what occurred and was said in July. This testimony, as given in the record, is as follows: Defendant testified:

"About the fifteenth of July, 1884, I went out to my mill with Duncan McLellan, of this city, and asked Tincate to secure me for what he owed me, and would owe me for sawing this lumber. Tincate said that I had possession of the lumber, and he would turn it all over to me then to secure me. As this lumber was manufactured, it was piled on the right of way mentioned, and had never been moved from that place until it was replevied in this case. In August, 1884, Tincate wanted to move one car-load of this lumber, and I gave him permission to do so. At this time Tincate owed me $215.50."

The counsel for said defendant had Duncan McLellan sworn as a witness for said defendant, who testified substantially as follows:

"I live in the city of Big Rapids, in this county. I was present when the defendant had a conversation with John Tincate, about Tincate turning out lumber to secure defendant for sawing. Tincate turned out to the defendant all the lumber piled and unpiled. This was about the fifteenth of July, 1884. I was present, and heard the whole conversation. I went there for the purpose of hearing it. The lumber was on both sides of the railroad track. Some was piled close to the switch, and some was not piled at all. This conversation was at defendant's mill, in the township of Colfax, in this county, about five miles east of the city of Big Rapids."

There is no evidence that defendant ever took possession of the property, or did anything to indicate that he had any claim thereon by way of security, until the plaintiff had purchased and attempted to remove the lumber.

The verbal arrangement certainly cannot be considered to be of greater legal efficacy as a security than it would have been had it been reduced to writing, in which case the statute declares it shall be absolutely void, as against creditors and subsequent purchasers and mortgagees in good faith, if the goods and chattels shall not be accompanied by an immediate delivery, and followed by an actual and continued change of possession, unless the mortgage, or a true copy thereof, be filed. (How. Stat., § 6193.) The change of possession required by this statute must be an open, visible and substantial change, and such as to give notice to the public that there has been an actual change of interest or ownership; and, in cases of property of the character of that in question, must be such as is practicable.

It was said in *Anderson v. Brenneman*, 44 Mich. 202, that "no such delivery and actual and continued change of possession of such bulky property could be expected or insisted upon. Yet there should be, even in bulky articles, such a clear and unequivocal designation thereof that creditors or subsequent purchasers could not be misled, or be in doubt as to the nature of the transaction." And it was further said: "Under such circumstances, where doubts exist, they must be solved in favor of the purchaser or

creditor, and against the mortgagee, because he, having power to protect himself fully and prevent others from being deceived, has not done so."

In this case, upon the plaintiff's own showing, the facts being admitted as stated in his and McLellan's testimony, it would not have been error for the court to have instructed the jury, as a matter of law upon those facts, that there had been no such delivery and change of possession as the statute requires. The charge as given was, therefore, more favorable upon this branch of the case than the defendant was entitled to under the testimony.

The judgment is affirmed.

The other Justices concurred.