Jordan and another vs. Estate of Warner.

CASSODAY, C. J., took no part.

JORDAN and another, Respondents, vs. ESTATE OF WARNER, Appellant.

*September 25 — October 12, 1900.*

*Estates of decedents: Accounting: Compulsory reference: Mortgages: Defeasance: Equity: Evidence: Legal or equitable action: Subject of the action: Election of remedy: Appeal: Immaterial and prejudicial error: Exceptions: Mortgagor and mortgagee: Tax titles: Usury: Tender of principal: Pleading.*

1. Under sec. 2864, Stats. 1898 (providing for compulsory references of all issues in the action, whether of law or fact, when the trial of an issue requires the examination of a long account on either side), a compulsory reference was proper, where, on appeal from the allowance by the county court of a claim against a decedent's estate, the trial in the circuit court involved matters of account as to numerous tracts of land, against which decedent had purchased tax certificates under an agreement with claimant to release them on being reimbursed, the transactions of such accounts covering a long period of time, and consisting of numerous debit items of payments to protect the lands from tax claims, and numerous credit items of sums realized from sales, redemptions, rent, trespass, etc.

2. Whatever form a conveyance of real estate, absolute on its face but given as a mortgage, may take, its true character may be shown by evidence *aliunde*, including parol evidence, whether the question be raised in a direct action for equitable relief or be incidental to relief demanded in an action at law: it is not essential that the mortgage feature should have been omitted by fraud or mistake.

3. A mortgage is a contract whereby an interest in property is pledged as security, and if in its execution a paper is made evidencing a part of it, and other papers be made at the same time evidencing other parts, all may be resorted to, and all must be construed to-

gether, if necessary, in order to determine the real nature of the transaction.

4. In such case if any of the papers satisfy the statute of frauds (sec. 2302, Stats. 1898) as to the necessity of the estate or interest in lands created *inter partes* being created in writing, the other essentials may be shown, if not evidenced by such writings, either by other writings which form a part of the same transaction, or by parol evidence.

5. In an action to recover from a decedent's estate damages for the unlawful sale by decedent of lands deeded to him by plaintiffs under a contemporaneous written agreement of decedent to reconvey on payment of a stipulated sum and interest, the sole primary subject of the litigation is the alleged indebtedness of the estate to the plaintiffs, and the question, therein presented for adjudication, as to whether the two instruments constitute a mortgage, is a mere incident of the primary right sought to be vindicated. A motion to require plaintiffs to elect on which cause of action they would rely is therefore properly overruled.

6. In an action tried by the court, where the evidence to which the rulings of the court were directed did not vary or materially add to the evidence received without objection, the error in such rulings, if any. is immaterial, because right or wrong they do not affect the final result.

7. Where all the records from which tabulated statements are compiled are before the court, and the witness who made the compilation testifies to their preparation from personal examination of the records, and that he believes the statements to be true, and the opposite counsel have ample opportunity to cross-examine the witness and inspect the records, such tabulated statements are properly received, not as an original, but as a part of the witness's, evidence.

8. Plaintiffs executed an absolute conveyance of lands to one since deceased, who at the same time executed and delivered to them a writing, referring to the conveyance, wherein decedent recited that he held claims against such lands, and other land of plaintiffs, for taxes and tax deeds, and that he thereby appointed plaintiffs his agents to sell the lands and account to him for the proceeds. The writing also provided that if, at any time within five years, those proceeds should be sufficient to satisfy a specified amount, with interest, and all other specified claims, plaintiffs would be entitled to a reconveyance of the remaining lands. *Held*, that the relation of mortgagor and mortgagee was created by such writings.

9. In an action to recover damages for the wrongful sale of such lands, it appeared that decedent had obtained tax titles, based on tax certificates which came to his possession while he was the mortgagee of plaintiffs in respect to the lands covered by the tax deeds. *Held*, that such tax deeds were invalid, and that decedent's estate was properly charged with the amount received by him on the sale of such lands.

10. Decedent having secretly, and in violation of his agreements, sold the mortgaged property, no injustice is done his estate by crediting the plaintiffs with the sale price of the lands, and charging them with all sums decedent paid out for tax claims thereon and all other legitimate expenditures; but no credit should have been allowed the estate for services of the decedent in making the sales.

11. Clerical errors in an account as settled by the court, made in preparing findings from minutes which the referee had before him, easily reconciled with the record without changing the final result, are not prejudicial to the appellant.

12. A general exception to a finding covering a large number of matters correctly found with a few not so found, is not sufficient to require the supreme court to review an assignment of error to the erroneous items.

13. Sec. 1692, Stats. 1898, which requires the plea of usury to be supported by proof of a tender of the principal of the debt as a condition of relief from a usurious contract, and the rule that usury, to be available, must be pleaded, are satisfied by the fact that the usurious contract is set forth in the complaint, which clearly shows the invalidity as to interest, and that the principal of the indebtedness was, long before the commencement of the action, fully paid by credits the debtors received or were entitled to receive from the creditor.

APPEAL from a judgment of the circuit court for Outagamie county: GEO. W. BURNELL, Judge. *Modified and affirmed.*

Plaintiffs filed a claim against the estate of William S. Warner for $4,200, based on facts alleged substantially as follows: November 11, 1884, plaintiffs conveyed to Warner, by deed absolute in form, a large number of tracts of land, particularly describing them, to secure their indebtedness to him amounting to about $3,000. The conveyance was made in part execution of a verbal agreement, which, on the day of the execution and delivery of the deed aforesaid,

was further executed by Warner giving to the *Jordans* a writing worded as follows:

"Whereas, *W. D. Jordan* and *Mary E. Jordan*, his wife, have this day conveyed to me by warranty deed, certain lands and real estate in the towns of Bovina and Maine, in Outagamie county, Wisconsin, and certain village lots in the village of Shiocton in said county, more particularly described in said deed to which reference is here had, and whereas I hold claims against said lands and *other lands* of said *Jordans* for taxes and tax deeds as charged in my book of account at this date, against *W. D. Jordan's* lands, of twenty-seven hundred and forty-six dollars and three cents, besides tax certificates thereon of sale of 1884, and of some other tax claims of said *Jordan's* lands not included in the deed aforesaid, and wishing an agent to sell and dispose of said lands and real estate conveyed to me as aforesaid, I have, this day, appointed and do hereby appoint said *Jordan* such agent, and for compensation, I hereby agree to allow and pay him for such agency for the sale of said lands or any part thereof, all the purchase money on such sales less the amount of tax claims thereon at the time of such sale, held by me, and twenty-five per cent. interest thereon, with costs of deeds, recording, etc., and should net proceeds of such sales at any time within five years so retained and paid to me amount to the said sum of twenty-seven hundred and forty-six dollars and three cents, with fifteen per cent. additional thereto annually, and all expenses incurred by me in reference thereto, and to cover all additional tax claims held by me on the lands of said *Jordan* not included in said amount, with lawful interest thereon at such time, then and in that case, I hereby agree to convey to said *Jordans* any of the lands so embraced in said deed to said *Jordans* and deliver to them all tax certificates and tax claims on all of the lands of said *Jordans* held by me at the time of such settlement.

"Witness my hand this 11th day of November, 1884.

"W. S. WARNER."

After the transaction stated Warner continued, till about February 6, 1896, to protect the lands mentioned in said instrument from tax liens by purchasing tax certificates from year to year or paying the taxes. No considerable amount of land was sold under the agency created by the paper, but *Jordan* took care of all of the property and collected damages from trespassers thereon, paying the money thus realized to Warner, who credited the same to plaintiffs in the land account mentioned in the writing. Warner, in addition to the lands sold with *Jordan's* approval, sold substantially all the rest of the lands without the knowledge of plaintiffs or their approval, and at a much less price than such lands were worth, the vendees being persons who were ignorant of plaintiffs' interest therein. No settlement of the account between the parties, in reference to the matter stated, occurred before Warner's death or has been made with his personal representative. The amount due the plaintiff is not less than $4,200, including damages caused by Warner's wrongfully disposing of the lands, as stated.

The administrator answered plaintiffs' claim by putting in issue the material allegations of fact upon which their claim was based, by pleading the six-years' statute of limitations (sec. 4222, R. S. 1878), and by alleging that Warner rightfully acquired the title to all of the lands by tax titles, which, prior to his death, ripened into indefeasible titles under the statute of limitations (sec. 1188).

The decision of the county court was in favor of the claimants. On appeal to the circuit court a compulsory reference, duly excepted to by defendant, was made, by which the cause was sent to Samuel Boyd to hear, try, and determine. Before the referee, defendant objected to the jurisdiction of the court, also to the receipt of any evidence for want of facts stated in the plaintiffs' claim sufficient to support the same, also to their being allowed to proceed to

trial without first electing upon what cause of action they would rely. All of such objections were overruled and due exceptions were taken to the rulings.

The following are in substance the facts found by the referee from the evidence, so far as such facts are necessary to the decision upon this appeal: May 10, 1881, by agreement between the parties, Warner purchased for *W. D. Jordan* a quantity of tax certificates on th'e land in question, at a cost to him of $1,010.70, for which sum *Jordan* gave his promissory note to Warner, payable three years after date thereof, with interest at the rate of ten per cent. per annum. At the same time Warner gave to *Jordan* a paper, showing the relations between the parties in reference to the transaction, which is as follows:

" This is to certify that I have bought tax certificates upon the land of *W. D. Jordan* and *Mary E. Jordan*, for which I have paid the sum of one thousand and ten and $\frac{70}{100}$ dollars. ($1,010\frac{70}{100}$), including the amount paid for redemption May 9, 1881, and that I hereby agree to sell to said *W. D. Jordan* the said tax certificates and certificate of redemption for the sum of one thousand and ten and $\frac{70}{100}$ upon the following terms and conditions, to wit:

" As collateral security upon the sale to said *W. D. Jordan* of the said tax certificates and certificate of redemption, the said *W. D. Jordan* gives to me his promissory note, bearing date herewith, for the said sum of one thousand and ten and $\frac{70}{100}$ dollars, payable within three years from the date hereof, with interest at ten per cent. per annum until paid, interest payable annually; and the said *W. D. Jordan* or his lawful representatives shall have the privilege at any time of redeeming any of said certificates of the earliest dates, in order first, and of receiving the same, by paying to me the face amount of the same, with the lawful annual interest of twenty-five per cent. that may have accrued thereon; and when the certificates thus redeemed, with the

twenty-five per cent. interest thereon, shall amount to the
sum of one hundred dollars or more, such sum thus paid in
redemption may be indorsed upon said promissory note, and
the same process may at any time afterwards within the
three years from the date hereof, or within such time as the
said note may be extended, be repeated, until the said prom-
issory note shall be paid, provided that none of said tax
certificates shall be allowed to outlaw, but that all such cer-
tificates shall be redeemed by the said *Jordan* or his legal
representatives in the manner above provided within five
years from the date of such certificates; and provided fur-
ther, that when the said promissory note shall be paid in
full, with the ten per cent. interest thereon, as above, and
all expenses incident to this transaction shall be paid by the
said *W. D. Jordan*, or his representative, then such of the
above-named certificates as shall remain in my hands and
the certificate of redemption above referred to I will deliver
to the said *W. D. Jordan* or his legal representative.

"Dated May 10, A. D. 1881.          W. S. WARNER."

Warner kept a book account of his business thereafter
transacted with *Jordan* in regard to said indebtedness and
securities, which account was entitled "*W. D. Jordan* Land
Account." The account was active till November 11, 1884,
charges being made from time to time for expenditures for
the purchase of tax claims against the land covered by the
certificates mentioned in the written agreement and against
other lands owned by the *Jordans*, and credits being given
for money received under such agreement, such credits ag-
gregating $1,241.90, when an accounting took place by which
the amount of the indebtedness of *Jordan* to Warner was
adjusted at $2,746.07 exclusive of tax certificates on lands
for 1884 and some other tax claims on *Jordan* lands not in-
cluded in the conveyance hereafter mentioned. Upon the
account being so adjusted a verbal agreement was made
between the parties, pursuant to which plaintiffs made a
conveyance to Warner and he gave them back a writing,

which conveyance and writing are the ones mentioned in plaintiffs' claim.

For the purpose of convenience, the lands conveyed to Warner will be hereafter referred to as "conveyed lands," and divided into two classes, "A lands" being those sold prior to Warner's death and "B lands" those not so sold. For the same purpose, the lands mentioned in the agreement which were not conveyed to Warner will be referred to as "other lands" and also divided into two classes, "C" standing for such as were sold during Warner's lifetime, and "D" for such as were not so sold.

After the transaction of November 11, aforesaid, Warner purchased a small book for the purpose of keeping a history of each tract of land covered by such transaction, in which book he entered all the lands by separate tracts, except in a few cases where collections of tracts were entered because they were located in the same block in platted lands. Under each such entry Warner noted all the tax claims he held against the tract, indicating that the amount thereof formed a part of the "*Jordan* land account." After the original entries made as aforesaid, Warner continued upon such book the history of his transactions in regard to each tract or collection of tracts of the lands, not closing up the account as to any until it was sold. Upon that event occurring, he balanced the account as to the tract so as to show the amount to which the *Jordans* were entitled pursuant to the transaction of November 11, 1884, and then made a memorandum indicating that such amount was credited in *Jordan's* land account, and it was so entered. The said land account was commenced at about the time the transactions between the parties began in 1881, and was continued by Warner in his own handwriting till the time of his death. The payments made to protect the lands from tax liens were entered in such account as debit items, and all sums realized from sales of or redemptions from tax certificates, or collections on account of illegal certificates, or for rent,

or for trespasses on the lands, or for timber sold, were entered as credit items. Warner took tax deeds in his own name, on certificates owned by him on the lands November 11, 1884, on substantially all thereof, and duly recorded such deeds. The lands were all wild and unoccupied from the beginning to the end of the transactions covered by these findings. *W. D. Jordan* had supervision of all the lands after the arrangements of November 11, 1884. He sold timber, collected trespass claims, and paid all money which he thus obtained to Warner, who credited the same as above indicated. He sold a few tracts of land, and Warner sold the greater part of the balance of the land prior to his death. Up to 1894 the sales were made in separate tracts, with *W. D. Jordan's* approval. After that, sales were made by Warner in collections of tracts regardless of the wishes of the *Jordans*, without their knowledge or consent, and at prices much less than the property was worth.

During the period covered by the foregoing, there was correspondence between Warner and *W. D. Jordan* in which the former uniformly acknowledged that his interest in the lands was limited to the amount due him from the *Jordans* indicated in his land account. Dividing the land account as it appears on Warner's book, so as to show the amount of his investment in each class of the lands at the time of the settlement of November 11, 1884, and also the items included in the settlement which were not liens against the lands, we have the following result:

| | | |
|---|---:|---:|
| A lands | $1,087 92 | |
| C lands | 716 95 | |
| | | $1,804 87 |
| B lands | $343 78 | |
| D lands | 55 85 | |
| | | 399 63 |
| Miscellaneous certificates | $387 65 | |
| Sundry items of expense and interest paid for certificates in excess of ten per cent | 153 88 | |
| | | 541 53 |
| | | $2,746 03 |

Carrying the account forward as to the lands sold, by charging all expenditures made by Warner to acquire tax liens thereon subsequent to November 11, 1884, and for obtaining and recording deeds, and other items of legitimate expense, and rejecting items not found legitimate, and crediting the sale price of the lands and receipts from other sources, such as trespass, rent, timber sold, certificates sold or redeemed, and collections on account of illegal certificates, the result is as follows:

| | | | |
|---|---|---|---|
| A and C lands as per settlement November 11, 1884, | $1,804 87 | | |
| Miscellaneous account............................ | 541 53 | | |
| Subsequent expenditures on A lands .... $1,151 74 | | | |
| Subsequent expenditures on C lands ...     586 28 | | | |
| | 1,738 02 | | |
| Cost of tax deeds, recording, and compensation for making deeds ................................... | 86 05 | | |
| A lands sold....................................... | | $3,354 23 | |
| C lands sold....................................... | | 2,688 20 | |
| Other items of credit.............................. | | 1,027 75 | |
| | $4,170 47 | $7,070 18 | |
| | | 4,170 47 | |
| | | $2,899 71 | |

The amount paid by Warner for tax claims against the unsold lands is not included in the above. They are omitted, also, from the final result, it being supposed that the value of the unsold land is amply sufficient to satisfy all demands against the same, and deemed proper to leave that branch of the transactions for adjustment independent of the result of this action except in so far as the facts are found in regard to the same. The relations between Warner and *Jordan* from beginning to end were those of mortgagor and mortgagee. The agreement of November 11, 1884, was usurious, and as the amount, $2,746.03, then found due Warner was fully paid to him, as above indicated, before plaintiffs' claim was filed, no interest should be allowed on that sum or any part thereof. Interest at the legal rate on all the expenditures made by Warner and charged in the land account subsequent

to November 11, 1884, should be allowed to him, because that is in accordance with the express provision in the writing of that date. Interest should also be charged to Warner at the legal rate on all sums received by him after the indebtedness of $2,746.03 was fully discharged. By charging and crediting interest in the manner indicated, up to May 1, 1899, the total sum due plaintiffs is $3,336.15, and for that sum they are entitled to judgment.

The findings show in detail the lands sold and those unsold. Such proceedings were duly had upon the report of the referee that it was confirmed and judgment was rendered in accordance therewith, all of the exceptions taken before the referee being preserved for review upon appeal to this court, and other exceptions being also preserved to the rulings of the circuit court. Defendant appealed.

For the appellant there was a brief by *Duffy & McCrory,* and oral argument by *J. H. McCrory.*

*John Bottensek,* for the respondents.

MARSHALL, J. The following propositions are presented for review on this appeal: (1) the court erred in referring all the issues to a referee to hear, try, and determine; (2) the demurrer *ore tenus* should have been sustained, (a) because the facts stated in the complaint are not sufficient to constitute a cause of action, and (b) because such facts are not sufficient to show that a court of equity has jurisdiction; (3) plaintiffs should have been required to elect on which cause of action they would rely; (4) there were errors in rulings on objections to evidence; (5) the evidence does not show that the conveyance of November 11, 1884, is a mortgage; (6) there were numerous errors in stating the account; (7) if the contract of November 11, 1884, is usurious, relief therefrom was not proper under the statute without a return of the principal of the debt, or, on equitable grounds, without a tender of the principal of the debt and legal inter-

Jordan and another vs. Estate of Warner.

est.    Each of such propositions will be considered so far as
the decision of the appeal seems to require.

1. Sec. 2864, Stats. 1898, authorizes a compulsory refer-
ence of all issues in an action, whether of law or of fact,
when the trial of an issue of fact therein requires the exam-
ination of a long account upon either side.    This case is
squarely within the statute.    *Druse v. Horter*, 57 Wis. 644,
upon which appellant relies, does not affect the question.
That was a suit in equity where, it was said, the law as to
compulsory references does apply.    There can be no doubt
of the discretionary power to refer the case, and we cannot
say such power was abused, since the suit was on an account,
and the other matters, however necessarily triable with the
main issue, were merely incidental to it.    *Littlejohn v. Re-
gents of University*, 71 Wis. 437.

2. The suggestion that the demurrer *ore tenus* should have
been sustained is based on some decisions of the supreme
court of North Carolina, to the effect that a deed, absolute
in form, cannot be varied by parol so as to show that it was
intended to be a mortgage, unless the mortgage feature was
omitted from it by fraud or mistake.    That was the com-
mon-law doctrine in equity.    Other state courts besides that
of North Carolina adhere to it.    There are several answers,
however, to the proposition: (a) The great weight of au-
thority in this country, where the subject is not regulated
by statute, including that of the supreme court of the United
States, is that, whatever form a conveyance of real estate
may take, it may be shown in equity, by parol, to be a mort-
gage, if that was its purpose in fact; and in code states,
where what were formerly actions at law and suits in equity
are triable in the same court, the distinctions between them
having been abolished, the true character of a conveyance,
absolute in form, given as a mortgage, may be shown by
evidence *aliunde*, including parol evidence, whether the
question be raised by a direct action for equitable relief or

be incidental to legal relief. 1 Jones, Mortgages, p. 282, ch. 8.
(b) The rule in this state is in accordance with the great
weight of authority. It was early established here, the first
case being *Rogan v. Walker*, 1 Wis. 527. The following
are a few of the other cases in this court on the subject:
*Kent v. Agard*, 24 Wis. 378; *Kent v. Lasley*, 24 Wis. 654;
*Harrison v. Juneau Bank*, 17 Wis. 340; *Sable v. Maloney*, 48
Wis. 331; *Hoile v. Bailey*, 58 Wis. 448; *McCormick v. Hern-
don*, 67 Wis. 648; *Becker v. Howard*, 75 Wis. 415. An ex-
amination of those cases will show that no discrimination is
made between legal and equitable actions as to the jurisdic-
tion of the court. The rule is not inconsistent with the
statute of frauds nor the principle that a written contract
cannot be varied by parol; though statements to the con-
trary are sometimes found in the books, including some of
the decisions of this court. It recognizes and gives effect
to two very familiar elementary principles of evidence,
namely, parol evidence may be resorted to to prevent the
inequitable or fraudulent use of a written instrument; and,
a written instrument, made in part execution of an entire
verbal contract and covering some essential part of it, does
not preclude showing the entire contract by a resort to parol
evidence. In *Kent v. Agard, supra*, the only question pre-
sented was, Is a person confined to the remedy in equity to
enforce his rights as mortgagor when such is the real rela-
tion between the parties but the written evidence does not
disclose that fact? and the point was decided in the nega-
tive. (c) The last ground upon which the demurrer was
properly overruled is that facts were alleged in the com-
plaint showing with reasonable clearness that the deed and
the contemporaneous transactions between the parties con-
stitute a mortgage, and that the evidence of it is contained
in the writings made by the parties. The written instru-
ment given by Warner to the *Jordans* at the time the deed
was executed, which is set forth in full in the complaint,

clearly shows the character of the deed.   Some further reference will be made to the evidentiary character of that writing when we reach another branch of the case.

It does not require any particular form of words to make a mortgage.   Mere form has very little to do with the matter.   It is a contract whereby an interest in property is pledged as security, which creates the relation of mortgagor and mortgagee.   If, in the execution of such a contract, a paper is made evidencing a part of it, and other papers be made at the same time evidencing other parts, all may be resorted to and all must be construed together if necessary in order to determine the real nature of the transaction.   If any of the papers satisfies the essentials of the statute of frauds (sec. 2302, Stats. 1898) as to the necessity of every estate or interest in land created *inter partes* being created in writing, the other essentials may be shown, if not evidenced by such writings, either by other writings which form a part of the same transaction, or by parol evidence, as before indicated.   Jones, Mortgages, § 60.

3. The court properly overruled the motion that plaintiffs be required to elect on which cause of action they would rely, for the very obvious reason that there was but one cause of action.   The sole primary subject of the litigation was the alleged indebtedness of the estate to plaintiffs.   The other matters presented for adjudication were mere incidents of and germane to the primary right which plaintiffs sought to vindicate.

4. It is sufficient to say, as to most of the rulings on evidence, that, right or wrong, they did not affect the final result, because the evidence to which they were directed clearly did not vary or materially add to the evidence received without objection.   Under this head the ruling most relied upon as prejudicial error appears to be that which resulted in admitting the evidence of John Bottensek and some tabulated statements prepared by him, showing the

lands sold by Warner, the consideration received for each
specific tract, as indicated by the records of deeds in the
office of the register of deeds for Outagamie county, also
showing the amount of tax claims acquired by Warner as
to each tract of land, that information being gathered from
the tax rolls for the years 1889 to 1894 inclusive. All the
records from which the tabulated statements were compiled
were before the court. The witness testified that he pre-
pared the statements from a personal examination of the
books and that he believed them to be true. Appellant's
counsel had ample opportunity to cross-examine the witness
and to inspect the books, and thereby test the credibility of
the evidence. It can readily be seen that it was imprac-
ticable to produce and spread upon the record of the trial
the history of each one of the large number of tracts of land
to which the evidence referred. Respondents' counsel pro-
ceeded in that situation by a method well recognized as
proper. Instead of reading in evidence the material por-
tions of the numerous books containing the multitude of
items, he produced the books and then gave from the mouth
of a witness who had personally examined them a summary
of the material facts, and put in, as part of such witness's
evidence, tabulated statements thereof. The statements
were not received as original evidence but as part of the
witness's evidence. The rule which sustains that course is
stated in Jones on Evidence at section 205, and is well sup-
ported by authorities, as follows: "Another relaxation of
the rule based on the necessity of the case may be thus
stated: Where the originals consist of numerous documents
which cannot be conveniently examined in court, and the
fact to be proved is the general result of an examination of
the whole collection, evidence may be given as to such re-
sult by any person who has examined the documents and
who is skilled in such matters, provided the result is capable
of being ascertained by calculation."

It seems that the rulings on evidence not particularly referred to must be deemed immaterial, on the principle that such rulings, made in a case tried by the court, cannot affect the result on appeal unless it be made to appear that contrary rulings would or might probably have led to a different result below.

5. We think the finding, that the deed of November 11, 1884, in view of the accompanying transactions, was a mortgage, is well supported by the evidence. It is difficult to understand how any other conclusion could be reasonably arrived at. The transactions between the parties commenced by the creation of an indebtedness of $1,010.70, for which *Jordan* gave Warner his promissory note, depositing with him the tax certificates and redemption receipts mentioned in the writing of that date signed by Warner, which is set forth in full in the statement of facts. November 11, 1884, the amount due Warner was agreed upon between the parties at $2,746.03. If the deed then given was intended to be a satisfaction of the debt, the reasonable probabilities are that the consideration named in it would have corresponded with the indebtedness. That subsequent transactions were contemplated between the parties, on the theory that the $2,746.03 was to continue, after the execution and delivery of the deed, an indebtedness of *Jordan* to Warner, is evidenced by the writing then made, which is as clearly a part of one entire transaction between the parties as the deed. In such writing we find unmistakable evidence that the relations existing between the parties were those of mortgagor and mortgagee and of debtor and creditor. While it recites that Warner received a conveyance of certain lands, that is followed by this significant language: " Whereas I hold claims against said lands and other lands of said *Jordans* for taxes and tax deeds as charged in my book of account at this date against *W. D. Jordan's* lands, of $2,746.03," and that is followed by language to the effect that the lands

were to be sold on account of the indebtedness mentioned, and those remaining, after payment of the indebtedness of $2,746.03 and the expenses incurred by Warner in protecting the lands from tax claims, provided that should occur within five years, should be reconveyed to the *Jordans.* Now if the deed was given with intent to convey the legal title to the property to Warner, why the recital that he held tax claims thereon? They were all merged into the legal title if the deed was made as an absolute conveyance. The statement under Warner's hand that he held tax claims against the lands in the nature of indebtedness against *Jordan,* after receiving a conveyance of the property, is plainly inconsistent with any reasonable theory, except that adopted by the court below, that the relation of mortgagor and mortgagee was created November 11, 1884, and that it continued to the end. The limit of five years for the redemption of the lands, named in the writings, had no more effect on the right to redeem thereafter than the ordinary defeasance clause in a mortgage upon a default in the condition thereof which gives force to such clause. At the expiration of the five years, Warner had a right to demand payment of any balance then due him from *Jordan* and to institute proceedings to recover such balance at law or to enforce his mortgage in the ordinary way.

There are many other circumstances to which we might refer to support the decision of the lower court on the point above discussed; but we will not incumber the books with a long discussion of the evidence to give merited significance to them. There are many such circumstances plainly pointing to the conclusion which the trial court reached, but such conclusion is well and sufficiently supported by the writings alone, to which we have particularly referred. There is no doubt but that a conveyance, absolute in form, cannot be turned into a mortgage without clear and satisfactory evidence that it was so intended by the parties thereto; but the decision appealed from easily stands that test.

Jordan and another vs. Estate of Warner.

6. It is said that it was improper to charge the estate the amounts received by Warner on the sale of the lands held by him under the tax deeds. It is sufficient to say as to that, that the tax titles Warner obtained were all based on certificates which came to his possession while he was the mortgagee of respondents in respect to the lands covered by them. Tax deeds taken under such circumstances have no binding validity. They do not change the title to property covered by them in the slightest degree, if the owner thereof sees fit to enforce his rights. *Geisinger v. Beyl*, 71 Wis. 358; *Avery v. Judd*, 21 Wis. 262; *Morgan v. Hammett*, 34 Wis. 512. It should be further remarked that the evidence clearly shows that all the certificates upon which the tax deeds obtained by Warner were based were either included in the settlement of November 11, 1884, or were thereafter charged as debit items in *Jordan's* land account. They were either held as security by agreement with the *Jordans* or were taken up by Warner to protect his mortgage interest in the land. In either case the tax deeds were invalid.

Appellant's counsel, by one exception, complain because, in stating the account, the court gave respondents credit for the lands sold by Warner at the sale price instead of according to the entries made in the land account. It is considered that no injustice was done the estate by the manner the referee stated the account. He credited respondents with the sale price of the lands and charged them with all sums of money Warner paid out for tax claims thereon, and all of his legitimate expenditures in and about the business, in accordance with the writing of November 11, 1884.

There are a number of other alleged errors in the account as settled by the lower court, cited to our attention, which appear to be easily reconciled with the record without changing the final result, except one. With that exception we must rest the case with the assurance that each of the alleged

errors in the account has been carefully examined, and that it has been found that a correction of them where wrong, so as to make them conform exactly with the record, would not change the result. Most of them are evidently mere clerical errors made in preparing the findings from the minutes which the referee had before him. Quite a number of mistakes were made in descriptions of land, but the amounts credited to respondents in the aggregate are correct, with the one exception mentioned. All the errors in the account would undoubtedly have been promptly cured in the court below if attention had been called to them in such a way as to have brought them definitely to the attention of the circuit judge. They might properly be discarded here because of the omnibus character of the exception to the finding. A general exception to a finding covering a large number of matters correctly found with a few not so found is not sufficient to require the court to review an assignment of error as to the erroneous items, any more than is a general exception to several specific findings of fact where some of them are correctly found. However, the appellant has not been prejudiced in this case by the want of care indicated in making the exceptions.

There is a charge of $150 as the sale price for the northwest quarter of the northwest quarter, section 20, 23, 16, the same description being charged in connection with another account. Counsel for respondents is not able to furnish any explanation of that error. It is suggested that it may not have been carried forward into the final result, but it seems that the presumption is rather the other way. It is quite clear that the principal of the indebtedness of the estate as found by the referee is erroneous by $150. We have not the benefit of the referee's interest computations, but we have stated the account with considerable care, including interest items, though we have omitted them from the opinion, and that seems to demonstrate that the apparent.

Jordan and another vs. Estate of Warner.

error of $150 is one in fact and that the judgment should be modified accordingly. The modification, in order to include a correction of an erroneous addition of interest which necessarily followed the erroneous addition of $150 of principal, is $198.35.

Objection is made because the referee refused to allow the estate credit for the services of Warner in selling the land. The decision in that regard is justified by the finding of fact supported by the evidence that the greater part of the lands were wrongfully sold. They were sold without the knowledge or consent of the *Jordans*. Obviously, if a trustee be guilty of a breach of trust, he cannot charge his *cestui que trust* for services rendered in the course of committing the breach.

7. Sec. 1692, Stats. 1898, which requires the plea of usury to be supported by proof of a tender of the principal of the debt as a condition of relief from the usurious contract, and the rule that usury, to be available, must be pleaded, are fully satisfied by the fact that the usurious contract in question was set forth in the complaint, which clearly shows the invalidity as to interest, and the further fact that the principal of the indebtedness was fully paid by the *Jordans* by credits they received or were entitled to from the sale of their lands, long before the commencement of this action.

Nothing further need be said. The judgment of the circuit court must be modified by deducting $198.35, and affirmed as modified, and the costs of respondents recoverable in this court must be limited to clerk's fees.

*By the Court.*— So ordered.

Cassoday, C. J., took no part.