BROWN, Respondent, vs. JOHNSON and others, Appellants.

*September 25 — October 21, 1902.*

*Mortgages: Foreclosure: Agreement to permit redemption: Fraud: Action to redeem: Evidence: Laches.*

1. Prior to the sale of land on foreclosure of a first mortgage, a second mortgagee agreed with the mortgagor to bid in the land for the latter and hold the title as security, allowing the mortgagor a reasonable time to redeem. Said mortgagee also stated to one W., who had an interest in the second mortgage, that he would bid in the land and protect said interest; and thereby induced W. not to attend the sale. The land was worth at least $6,000, but was bid in by the second mortgagee for $3,500. W. was a man of means and could have bid $6,000, and but for said statements would have attended the sale and would have bid at least $1,000 more than the sum for which the land was sold. After the sale the purchaser refused to permit the mortgagor to redeem. *Held*, that this was such a fraud upon the mortgagor as entitled him to maintain an action to redeem.

2. Parol evidence was admissible, in such case, to show the agreement to permit the mortgagor to redeem.

3. Upon the evidence—showing, among other things, that the mortgagor was to have a reasonable time to redeem; that the purchaser told him he didn't care when the money was paid, so long as the mortgagor paid the interest; that the mortgagor tried for more than a year after the sale to get the money; that a few weeks before he got it the purchaser told him he would be glad to take it, and figured up the amount due; and that the action to redeem was commenced soon after the refusal to permit redemption, and about fifteen months after the sale — it is *held* that the action was not barred by laches.

APPEAL from a judgment of the circuit court for Brown county: S. D. HASTINGS, JR., Circuit Judge. *Affirmed.*

This is a bill in equity to redeem from a mortgage foreclosure and sale, by reason of an alleged defect in the proceedings, and also by reason of an alleged agreement with the purchaser at such sale to allow such redemption. It is undisputed that at the times mentioned the plaintiff was the owner of two farms,—one of 277 acres, known as the Brown farm, and the other of about 200 acres, and known as the Voyer farm; that July 13, 1892, he gave his note for $2,500, with interest at six per cent., to one Fred Ehlers, secured by mortgage executed by himself and wife on the Voyer farm; that April 22, 1894, he gave his note for $2,500, with interest at six per cent., to the T. B. Scott Free Public Library of Grand Rapids, secured by mortgage executed by himself and wife on the Brown farm; that September 22, 1894, he gave his note for $165, with interest at seven per cent., to Felix Walloch, and secured the same by mortgage executed by himself and wife on both farms; that thereafter, and on the same day, he gave a note for $700, with interest, to Edgar Warner, and two notes for the aggregate amount of $380, with interest, to Johnson, Hill & Co., and secured the same by mortgage executed by himself and wife, running to *Nels Johnson* (a member of that firm) upon both of said farms; that the mortgage to the T. B. Scott Free Public Library was foreclosed, and judgment of foreclosure and sale was duly rendered and entered therein October 13, 1896, and thereupon and in pursuance of such judgment the Brown farm was on December 2, 1897, sold on foreclosure sale, subject to the taxes thereon, and bid in by the said *Nels Johnson,* for and in behalf of his firm, for $3,500, and the usual sheriff's deed of the Brown farm was thereupon given to *Nels Johnson,* and thereupon such sale was confirmed by the court; that the amount for which the Brown farm was so bid in was enough to cover the amount due on the T. B. Scott Free Public Library mortgage, and the costs and disbursements of foreclosing the same, and $115 in addition, which *Nels Johnson*

credited on the $380 notes held by his firm, as mentioned; that December 3, 1897, *Nels Johnson* and wife gave to the T. B. Scott Free Public Library, in satisfaction of its prior mortgage, a note and mortgage for $3,168.32, with interest at six and one-half per cent., on the Brown farm, so bid in by him.

In addition to the facts stated, the complaint alleges, in effect, that the Brown farm was at the time of the foreclosure sale of the value of $11,000, and the Voyer farm of the value of $5,000; that *Nels Johnson* had become the owner of the Edgar Warner note and the Ehlers note and mortgage; that the requisite notice of foreclosure and sale was not given; that prior to such sale the firm of Johnson, Hill & Co., and particularly *Nels Johnson,* repeatedly assured the plaintiff that they would bid in the Brown farm on such sale, and protect the plaintiff's interest and allow him to redeem the farm from such sale; that, relying upon such assurances, the plaintiff made no effort to procure bidders at such sale, as he otherwise would have done, and that one responsible person was, by reason of such assurances, deterred from being present and bidding upon such sale; that under the circumstances there were but two bids upon the sale,—one by the attorney for the mortgagee, and the other by *Nels Johnson;* that Johnson, Hill & Co. took possession of the Brown farm in March, 1898, and the plaintiff then removed therefrom onto the Voyer farm; that January 9, 1899, the plaintiff negotiated a loan sufficient to take up and pay all of the mortgages and liens upon the premises, and interest, and notified Johnson, Hill & Co. thereof, but on or about January 20, 1899, they declined and refused to allow the plaintiff to redeem the Brown farm from such sale, and denied his right to redeem therefrom.

The answer admits most of the facts stated, and alleges that Johnson, Hill & Co. purchased the Felix Walloch note and mortgage November 8, 1894; but the answer denies the

want of notice of sale and the alleged agreement to allow re-
demption.

On March 11, 1899, the plaintiff commenced this action to
redeem.

At the close of the trial of the issues so made, the court
found, in effect, that there had been no notice posted in one
town where a part of the lands so sold were situated; that the
plaintiff did not know of the fact when he moved from the
Brown farm to the Voyer farm; that Edgar Warner was the
owner of the $700 note, and a corresponding interest in the
mortgage to secure the same, in the name of *Nels Johnson;*
that (9) when the lands were so bid in at such foreclosure
sale the same were worth at least $6,000, and they have since
that time increased in value the sum of $1,000, and that
*Nels Johnson* paid for such lands only $3,500; (10) that
prior to such sale upon foreclosure the plaintiff had had nego-
tiations with *Nels Johnson,* for and in behalf of his firm,
about bidding in said land for the plaintiff, and it was under-
stood that Johnson, Hill & Co. would bid in the mortgaged
premises on the foreclosure sale for the plaintiff, and hold
the title thereof as security for the moneys advanced by
Johnson, Hill & Co. until repaid, with interest,—the plaint-
iff to have a reasonable time to repay them for the money so
advanced, with interest; (11) that in September, 1897, *Nels
Johnson* told Edgar Warner that Johnson, Hill & Co. would
bid in the lands at such foreclosure sale for the plaintiff, and
that Warner's said interest in the lands as subsequent mort-
gagee, to the extent of $700, would be protected, which fact
was unknown to the plaintiff until a short time before he be-
gan this action; (12) that, in consequence of and by reason
of such statements and assurances, Edgar Warner did not at-
tend the sale; (13) that, had it not been for such statements
of *Johnson* to Edgar Warner, Warner would have been pres-
ent at the foreclosure sale, and would have put in a bid

thereon, which would have been more than $1,000 above the sum which *Johnson* bid at such sale; (14) that Warner was a man of means, and could have bid in the premises for at least the sum of $6,000; (15) that in January, 1899, the plaintiff obtained a loan of sufficient money to redeem the lands so mortgaged, and at once offered to redeem the same from all claims held by *Johnson* and Johnson, Hill & Co., but that they refused to permit the plaintiff to so redeem; (16) that as soon as the lands were bid off by *Johnson*, and on December 3, 1897, *Nels Johnson* gave to the board of directors [of the T. B. Scott Free Public Library] a mortgage covering such premises, to secure the payment of the sum due to said board of directors under and by virtue of said judgment of foreclosure, which mortgage and note thereby secured are now past due; (17) that during all said transactions *Nels Johnson* was acting for and in behalf of Johnson, Hill & Co., and not for himself personally; (18) that no facts are before the court which will enable it to determine the sums paid out by Johnson, Hill & Co., and for which they should be reimbursed, or by which the court could determine the rents and profits received by said company upon and from such property.

And as conclusions of law the court found (1) that the failure to post notice of the foreclosure sale in the town of Rudolph was an irregularity which was waived and cured by failure of the plaintiff to appeal from the order confirming the sheriff's report of sale, and by vacating the premises pursuant to notice given by *Johnson*; (2) that the refusal of Johnson, Hill & Co. to permit the plaintiff to redeem the property, under all the facts found in this case, was a fraud upon the plaintiff; (3) that the plaintiff is still the owner of the equity of redemption in the lands described, and is entitled to redeem the same upon payment to Johnson, Hill & Co. of the amount to them found due on a proper accounting; (4) that an accounting should be had between the parties,

and the balance due to the several parties to this action ascertained. On such accounting the plaintiff should be allowed a reasonable sum for the rent of the premises during the time they have been occupied by Johnson, Hill & Co.; (5) that, providing the accounting cannot be agreed upon between the parties to this action, a referee should be appointed by the court to take the necessary testimony and state the account between the parties; (6) that when such account should be stated and the balance due agreed upon, the plaintiff shall be allowed ninety days time after final judgment in which to pay such balance and redeem said premises; (7) that, upon payment of such balance due, *Nels Johnson* and his wife must deed to the plaintiff, his heirs and assigns, said premises, which deed shall operate to extinguish the claim of Johnson, Hill & Co., and all persons claiming by, through, or under them or the said *Nels Johnson;* that the judgment in this action provide that the plaintiff have his costs; (8) that in such accounting Johnson, Hill & Co. are to be credited with all they have paid for the lands on the foreclosure sale, all taxes thereon by them paid, all expenses for necessary repairs on said premises, and the value of all permanent improvements made, and interest on payments from date thereof to the date of redemption; (9) and be charged with a reasonable rental of the premises since *Johnson* (Johnson, Hill & Co.) took possession, and while they have been in possession thereof.

A referee being appointed, and an accounting had as so directed, it was found, December 5, 1901, "that, after making all just and proper allowances and striking a balance, that there is due the defendants in this action at the date of this report, from the plaintiff, the sum of $4,323.69." Thereupon, and on December 24, 1901, it was ordered by the court that such report of the referee be, and the same was thereby, in all respects confirmed, and judgment was ordered and directed in accordance with the findings of the court thereinbe-

fore made in such action, and in accordance with such report
of the referee.    From such judgment the defendants appeal.

*George L. Williams,* for the appellants.

For the respondent there was a brief by *B. M. Vaughan,*
attorney, and *Lamoreux & Park,* of counsel, and oral argu-
ment by *Mr. Vaughan.*

CASSODAY, C. J.    It is contended on the part of the ap-
pellants that the tenth finding of fact, the substance of which
is given above, is not sustained by the evidence.    There is
certainly plenty of evidence to the effect that, in pursuance
of negotiations by and between the plaintiff and *Johnson,*
the latter agreed prior to the sale that Johnson, Hill & Co.
would bid in the mortgaged premises on the foreclosure sale
for the plaintiff, and hold the title thereof as security for the
moneys advanced thereon until paid, with interest, and that
the plaintiff should have a reasonable time to repay the same.
But it is claimed that such evidence is greatly weakened by
the admission of the plaintiff some time before the trial, when
examined under sec. 4096, Stats. 1898, to the effect that there
was "no actual agreement" between him and *Johnson.*    But
the plaintiff was of French and Irish descent, and born in
Canada, where he had remained for twenty years, and during
that time spoke the French language; and, although he had
lived for thirty-seven years in Wood county, yet he could
read but little English, even in print, and could write only a
few words.    He explained on the trial that, when he testified
that there was "no actual agreement," he meant that there
was no agreement in writing.    *Nels Johnson,* as a witness in
behalf of the defendants, admitted that in the summer be-
fore the sale the plaintiff asked him if he could not help him
out by paying "up *all* his obligations, and have the place in"
his "name or the company's name," and that he told the
plaintiff that he would think it over, and see him again; that
he finally concluded that if he did so it might get him into

a lot of trouble, and so notified the plaintiff of his conclusion not to do so; that a few days before the sale he told the plaintiff that he could not bid in the place,—that he did not have the ready money to do it, and so could not help him. It stands admitted that, immediately upon bidding in the property at the foreclosure sale, *Johnson* gave back a mortgage to the mortgagee for nearly the whole amount of his bid. So it is admitted that a little more than a year after the foreclosure sale the plaintiff actually obtained a loan of money enough to pay and take up his entire indebtedness against the lands and the lands covered by the other mortgages held by *Nels Johnson* and Johnson, Hill & Co., and at once offered to redeem said lands, and the whole thereof, from all claims held by *Johnson* and Johnson, Hill & Co., but that *Johnson* refused to permit such redemption of the lands so bid in by him, and claimed that Johnson, Hill & Co. owned the lands and that the plaintiff had no equity of redemption therein. The plaintiff is corroborated not only by the testimony of Edgar Warner and wife, as in effect found by the court, but to some extent by the circumstances in the case. Certainly we cannot say that the tenth finding is so manifestly against the clear preponderance of the evidence as to justify this court in disturbing the same. Nor can we hold that the other findings of fact to which exceptions are taken are against the clear preponderance of the evidence. The substance of them is given in the statement of facts, and need not be here repeated.

2. Counsel for the appellants further contends that the findings of fact as to the value of the Brown farm, the agreement of *Johnson* to allow the plaintiff to redeem the same from the foreclosure sale, and the statements of *Johnson* to Warner, whereby he was induced to remain absent from the sale, and not to be prepared and present at the sale to bid thereon, did not warrant the conclusion of law that the refusal of Johnson, Hill & Co. to permit the plaintiff to redeem

from the sale was a fraud upon the plaintiff. In support of such contention, counsel invokes the well-established rule of law that, in order for false representations to operate as a fraud, they must relate to then present, existing, or past facts, and not to the mere nonperformance of a promise to do something in the future. Besides, counsel contends that the agreement or promise found by the court "was too vague, indefinite, and uncertain to admit of enforcement," and "was entirely lacking in the element of mutuality," and that parol evidence was inadmissible to prove such agreement. In answer to such contentions, it is enough to say that this is not an action for fraud, in the sense used by counsel, nor is it an action for the specific performance of a contract. It is a bill in equity to redeem from the foreclosure and sale, by reason of the promises and conduct of *Nels Johnson* and Johnson, Hill & Co., prior to the sale. As stated by Mr. Justice BARDEEN in a recent case:

"The principle has long been established and frequently recognized in this court that oral evidence is admissible to show that a deed absolute on its face was in fact executed as security for a debt, and was therefore a mortgage." *Schierl v. Newburg,* 102 Wis. 554, 78 N. W. 761, citing numerous cases.

It is there further said, by way of quoting from other adjudications,

"That whenever property is transferred, no matter in what form or by what conveyance, as the mere security for a debt, the transferee takes merely as a mortgagee, and has no other rights or remedies than the law accords to mortgagees." *Id.*

See *Jordan v. Warner's Estate,* 107 Wis. 550–552, 83 N. W. 946, 950. As said in this last case by Mr. Justice MARSHALL:

"It does not require any particular form of words to make a mortgage. Mere form has very little to do with the matter. It is a contract whereby an interest in property is pledged

as security, which creates the relation of mortgagor and mort-gagee."

Perhaps the case most similar to the one at bar is *Wilcox v. Bates,* 26 Wis. 465. In that case the complaint charged that Bates and Harvey had acquired the legal title under an arrangement by which they were to hold the same as security for moneys advanced by them to pay the plaintiff's debts, and that they had conveyed a portion of the lands to their wives without any consideration. Bates and Harvey obtained the legal title to a portion of the land through the foreclosure of a mortgage in favor of one Naiden, who bid off the land on foreclosure sale, and then conveyed the same to Bates and Harvey on their paying a part and becoming responsible for the balance of the money due him. They obtained the legal title to other portions of the land through tax certificates and certificates of sale upon judgments against Wilcox. That was a bill to redeem, as here, and it was held that the evi-dence was sufficient to show that the defendants, in acquir-ing the legal title to the plaintiff's lands, acted under an agreement by which the plaintiff might reacquire the title on repayment of the moneys advanced, etc. Quite similar are the cases of *Sweet v. Mitchell,* 15 Wis. 641; *Spencer v. Fredendall,* 15 Wis. 666; *Carr v. Carr,* 52 N. Y. 251; *Hoile v. Bailey,* 58 Wis. 434, 17 N. W. 322; *Schriber v. Le Clair,* 66 Wis. 579, 29 N. W. 570, 889.

3. The only hesitancy we have had in sanctioning the con-clusions of law of the trial court is the delay in commencing the action, and what occurred after the foreclosure sale. As indicated, the court found that part of the agreement was that the plaintiff was to have a reasonable time to repay the money and interest. The plaintiff testified to the effect that at the time of making the agreement he asked *Johnson* when he should pay back the money and that he said, "he didn't care when it was paid, as long as" the plaintiff "paid the interest;" that he commenced hunting for the money right

away after the sale, and kept on until he found it; that, a
few weeks before he found the money, *Hill* and *Johnson* both
told him that they were willing to take the money, and would
be very glad to get it, and would sooner pay $100 out of their
own pockets than not to have him find the money; that they
made such statements two or three times before he found that
money; that at one of those times they figured up the amount
due them from the plaintiff on a paper, Exhibit No. 1, which
the plaintiff put in evidence, and which included $3,958.72
for the price paid, with interest and taxes, and also $153.70
by way of improvements; and the "second sheet" showed
the plaintiff's other debts outstanding; and also Exhibit
No. 2, prepared by them, showed the personal property which
they had on the farm; that after the plaintiff got the money,
and told *Johnson,* the latter sent him to the defendant *Wit-
ter,* in Grand Rapids; that *Witter* told him that he did not
owe him anything, but that he owed *Johnson* and *Hill,* and to
go and settle with them; that he saw Johnson, Hill & Co.,
and they told him to see *Witter* again, and tell him that they
wanted he should sign the deed; that he did so, and that
*Witter* said he would not do so unless the plaintiff took all
of the personal property on the place; that they would give
him ten days to raise the money; that the plaintiff figured
on the value of the stock, and that there was $200 difference
as to the estimated value; that Johnson, Hill & Co. finally
refused on the ground that *Witter* would not consent.   Soon
after, the plaintiff commenced this action, as stated.   The
final judgment allowed to Johnson, Hill & Co. the amount
they bid in the farm for, and interest, the amount they paid
for taxes, and interest, and the amount they paid for im-
provements, and interest, making, in all, $5,750.60, and de-
ducted therefrom, as due to the plaintiff "for rents and
profits," and interest thereon, $1,426.91, leaving a balance
of $4,323.69, which amount the plaintiff was adjudged to
pay Johnson, Hill & Co., to redeem the premises as directed

in the judgment. We cannot hold, upon the findings of the court and the evidence in the record, that the plaintiff was barred from maintaining this action by reason of laches. This makes it unnecessary to consider whether the failure to post notices in the town of Rudolph gave a right to redeem.

*By the Court.*—The judgment of the circuit court is affirmed.