SCHIERL, Executrix, Respondent, vs. NEWBURG and another, imp., Appellants.

*March 15 — April 4, 1899.*

*Appeal: Findings: Absolute deed or mortgage?*

A finding of the trial court that a deed absolute in form was intended as an absolute conveyance and not as a conveyance by way of security is *held* to be against the clear preponderance of the evidence.

APPEAL from a judgment of the circuit court for La Crosse county: O. B. WYMAN, Circuit Judge. *Reversed.*

On November 26, 1895, the defendant *Catherine Newburg* was, and for a long time prior thereto had been, the owner and in possession of the premises described in the complaint. At that time the land was incumbered by six mortgages.

The two junior mortgages — one for $500, and the other for $1,000 — were held by the plaintiff to secure him against liability on certain notes indorsed by him for the defendants. The mortgage debts against the land at that time, with back taxes, amounted to about $4,000. On the date above mentioned, the parties met in the office of Mr. Daniels, an attorney, and a deed for the premises to plaintiff was drawn up, and executed by defendants. Whether it was delivered on that day, or the next, is one of the disputed facts in the case. On November 27th the parties again appeared at the attorney's office, and the plaintiff then executed and delivered to the defendant *Catherine* a land contract, by the terms of which she bound herself to pay plaintiff the sum of $4,000, with seven per cent. interest, payable annually, in annual instalments of $500 each, besides the taxes on the land. Upon such payments being made, plaintiff agreed to convey the land to her, clear of all legal claims, except taxes. Payments were not made as agreed. The plaintiff then brought this action to foreclose the land contract.

The defendants answered by way of counterclaim, to the effect that the plaintiff agreed to take up and assume the mortgage debts on the farm, take a deed for the same, and hold it, allowing the defendant *Catherine* to repay the amount thereof at the rate of $500 annually, and, upon such payments being made, to reconvey the land. The defendants admitted failure to pay certain taxes and the first instalment due on the contract. Their demand for relief was that the deed be declared a mortgage.

The court found that the deed mentioned was fully executed and delivered on November 26, 1895; that $4,000 was the full value of the land, and a fair consideration for the sale of the same; that it was the intention of the parties that the deed should be an absolute conveyance of the premises; that the contract to convey the lands correctly

stated the intention of the parties; and that it was not the intention to create a mortgage by the deed and land contract. He also found that defendants were in default under the contract, and directed a judgment of strict foreclosure. The defendants appeal from the judgment so entered.

After the case reached this court the plaintiff died and the action was revived in the name of his executrix. The word "plaintiff" in the opinion refers to the deceased.

*John A. Daniels,* for the appellants.

For the respondent there was a brief by *Winter, Esch & Winter,* and oral argument by *W. C. Winter.*

BARDEEN, J. The main controversy is whether the transaction between the parties was an absolute sale of the land or in effect a mortgage. The principle has long been established and frequently recognized, in this court, that oral evidence is admissible to show that a deed absolute on its face was in fact executed as security for a debt, and was therefore a mortgage. *Plato v. Roe,* 14 Wis. 453; *Sweet v. Mitchell,* 15 Wis. 641; *Kent v. Agard,* 24 Wis. 378; *Ragan v. Simpson,* 27 Wis. 355; *Nightingale v. Barens,* 47 Wis. 389; *Lamson v. Moffat,* 61 Wis. 153. An expression frequently used in the cases is "that whenever property is transferred, no matter in what form or by what conveyance, as the mere security for a debt, the transferee takes merely as a mortgagee, and has no other rights or remedies than the law accords to mortgagees." *Hoile v. Bailey,* 58 Wis. 434; *Starks v. Redfield,* 52 Wis. 349; *Howe v. Carpenter,* 49 Wis. 697; *Merchants' & M. S. Bank v. Lovejoy,* 84 Wis. 601; *Schriber v. Le Clair,* 66 Wis. 579.

There are a few facts in this case upon which all parties agree. Briefly, they may be stated as follows: That the defendant *Catherine Newburg* was the owner of the land in question, and in possession thereof, and that plaintiff has never had possession; that the land was incumbered by at

least six mortgages, the plaintiff holding the two junior securities; that the debts against the property on November 26, 1895, amounted to about $4,000; that some of the mortgagees were pressing payment; that the deed under which plaintiff claims bears date November 26, 1895, and the land contract on the following day; that both the deed and contract eventually came to the hands of the parties entitled thereto; that plaintiff has paid about $2,200 of the indebtedness against the farm; that he purchased the Johnson note and mortgage after he received the deed, and took an assignment thereof to himself, instead of having the same satisfied; and that he still holds said mortgage and note and has not delivered any of the securities or notes he has paid to the defendants. These are undisputed facts.

Upon the disputed questions in the case the court held with the plaintiff; and, unless we can say that the evidence is clear that it was the real intention of the parties that the transaction was to be a mortgage, his findings ought not to be disturbed. *Becker v. Howard*, 75 Wis. 415.

There was a sharp conflict in the testimony as to just what occurred in Mr. Daniels's office at the time the deed was drawn. Both defendants and the scrivener say the deed was drawn and executed on the 26th, but not delivered; that after the deed was drawn the plaintiff said he did not believe he would close the matter up then, as he wanted to see how much there was due on the paper he had indorsed; that he went home, and the parties came back the next day, when the deal was consummated, and both deed and contract were then delivered. Plaintiff swears that the deed was delivered on the 26th, and that the contract was an afterthought, and made in pursuance of an agreement with defendants after the deed was delivered. He does say, however, "I refused to sign the deed in Daniels's office on the 26th, and said I wanted to look the matter up and find out how much *Newburg* was owing me." Just what he meant by saying, "I

refused to sign the deed," is not clear, but the fact that he wanted to find out how his account stood with *Newburg* is confirmatory of Daniels's statement that the transaction was not closed on the 26th. Plaintiff's bookkeeper testified that, to the best of his recollection, the deed was delivered to plaintiff on the 26th, and put in the safe.

When viewed in the light of the surrounding circumstances, we are quite clear that the finding of the court is against the clear preponderance of the evidence. Mr. Daniels is positive that he kept the deed himself over night, and that both deed and contract were delivered together. His testimony is also quite clear and satisfactory as to what transpired in his office, leading up to the execution and delivery of these papers. The conclusion is almost irresistible that plaintiff was to take up the indebtedness against the land and allow the defendants to pay him back at the rate of $500 per year. The plaintiff's acts are consistent with this theory, and utterly inconsistent with any other theory. If he did come, as he claims, to be the absolute owner of this farm, why should he take an assignment of the Johnson mortgage? Speaking of the notes he had indorsed and the mortgage he had paid, he said: "I was to keep them, or could keep them, until the time when the contract became a deed." And again: "I have taken an assignment of the Johnson mortgage to myself. I was willing to deliver up these notes that I had paid, at any time when the contract and everything was settled." If he had made an absolute purchase of this land upon the consideration that he was to pay the claims against it, there was nothing to be settled, in that respect. All parties agree that they had figured up the amount of these outstanding debts, and that they amounted to the sum mentioned as the consideration in the deed, and also in the contract to reconvey. The principle recognized in the authorities is that once a mortgage always a mortgage. *Hunter v. Maanum*, 78 Wis. 656. So, when the parties' acts are only consistent

with the theory of the continued existence of the mortgage debt, that fact is bound to have considerable persuasive force in passing upon oral disputes.   We are therefore unable to reconcile the plaintiff's conduct with his statement of what the transaction really was.   We are convinced that the court's findings are contrary to the intentions of the parties, and contrary to the actual fact.   The deed, though absolute in form, was a conveyance by way of security, and therefore necessarily a mortgage.   The contract, although purporting to be a contract of purchase, was merely a defeasance of the contemporaneous deed.   Plaintiff's rights in the premises are no greater than those of a mortgagee, and as such he must enforce them.   The defendants having set up the facts in their answer, and admitting themselves to be in default, there seems to be no good reason why full and adequate relief may not be granted in this action.   The judgment of the circuit court will therefore be reversed, and the case remanded with directions to enter the usual judgment of foreclosure and sale as provided in cases of mortgages.

*By the Court.*— So ordered.