SMITH and another, Respondents, vs. PFLUGER, Appellant.

*October 28—November 14, 1905.*

*Mortgages: Conveyance absolute in form: Parol evidence: Statute of frauds: Contract for benefit of third person: Enforcement: Novation.*

1. A conveyance of property in writing as security is a mortgage regardless of the letter of the instrument. The purpose not the form determines its character.
2. No matter what the nature of a conveyance may be which is given as security, when the evidence, either written or parol, establishes the fact that the relation of mortgagor and mortgagee exists between the parties, the right of the party is limited to a mere mortgage interest.
3. The foregoing propositions do not violate the rule that a written contract cannot be varied or contradicted by parol, nor are they inconsistent with the statute of frauds.
4. Such propositions rest on the rule that an ambiguity in a written instrument, which arises by applying the paper to the subject with which it deals, may be solved by the circumstances characterizing its making, and the further rule that the reduction of one feature of an entire transaction to writing in part execu-

tion thereof does not preclude proof by parol of the other features and the enforcement of the intention of the parties as evidenced by the whole transaction.

5. If a person makes a contract with another for the benefit of a third person, the latter may enforce it at law regardless of his relations with the first person, or whether he had any knowledge of the transaction between such person and such other at the time of its occurrence, and regardless of any formal assent thereto on his part prior to the commencement of the action.

6. A novation contract, as where A. owes B., and B. owes C., and the three mutually agree that A. instead of paying B. shall pay C., and C. agrees to take A. as his debtor in place of B. and release the latter, is one thing, and an agreement for a sufficient consideration to support it moving from one to another for the benefit of a third, who may be an entire stranger to the transaction, is another. The latter is enforcible without any element of a novation contract characterizing it.

[Syllabus by MARSHALL, J.]

APPEAL from a judgment of the circuit court for La Crosse county: J. J. FRUIT, Circuit Judge. *Affirmed.*

Action to recover on contract. The claim of the plaintiffs was that one Peter Pfluger, being indebted to various persons, including plaintiffs for $643.65, and possessed of some cooperage machinery, sold the same to *John Pfluger* for $1,400, the latter agreeing to pay the purchase price to certain specified creditors of the former, including plaintiffs, so far as necessary to discharge the indebtedness to them respectively; that in consummating the sale the property was delivered to the vendee but transferred in form by bill of sale to the C. & J. Michel Brewing Company, of La Crosse, Wisconsin, as security, on account of its having aided him in obtaining money to pay for the goods, by means of a note given to the German American Bank, the company taking from him a paper showing that its interest in the property was only as security against liability on said note; that defendant paid for the property accordingly as regards all creditors of Peter Pfluger, except plaintiffs; that the latter have demanded payment from defendant of their claim, but that the same has not been paid.

Defendant answered by a general denial. On the trial the theory advanced by defendant was that there were some negotiations for a sale by Peter Pfluger of his cooperage machinery to *John Pfluger* for the sum of $1,400, the consideration to be paid to the creditors of Peter Pfluger, but no trade of that sort was consummated; that the idea thereof was abandoned and the property sold by Peter Pfluger to the Brewing Company, it in turn selling the same to defendant. There was evidence tending to support both theories. It was undisputed that Peter Pfluger made a bill of sale of the property direct to the Brewing Company, but that the goods were delivered by him to *John Pfluger,* the Brewing Company taking from him a written acknowledgment at the foot of its bill of sale to the effect that the property was received from such company, and was to be absolutely the property of *John Pfluger* upon his saving the company harmless from the aforesaid note. The creditors of Peter, whom plaintiffs claimed *John* agreed to pay on account of the consideration for the cooperage machinery, were paid by *John,* save and except the plaintiffs. Upon the evidence, under the direction of the court, the jury rendered a verdict in favor of the plaintiffs, upon which judgment was rendered.

*C. L. Hood,* for the appellant.

For the respondents there was a brief by *Doherty & Baldwin,* and oral argument by *C. L. Baldwin.*

MARSHALL, J. Complaint is made by appellant because the court referred to the bill of sale to the Brewing Company and the receipt taken by it from appellant, showing such company's only claim upon the property to be for security, as a mortgage. Counsel seem to suppose that an instrument, in form an absolute conveyance, cannot be shown to be anything else except by judicial interference in an equitable action. Such is not the general rule, especially in jurisdictions where

the distinctions between actions at law and suits in equity have been abolished.

The mere form of an instrument cuts but very little figure in respect to whether it is enforcible as a mortgage or not upon its character being called in question in a legal or equitable action, as those terms are used under our system. The purpose of the instrument is the controlling feature under all circumstances. If that is security and the facts of the matter are established in any action involving the subject, the instrument is treated as a mortgage and nothing else. *Starks v. Redfield,* 52 Wis. 349, 9 N. W. 168; *Hoile v. Bailey,* 58 Wis. 434, 17 N. W. 322; *Schriber v. LeClair,* 66 Wis. 579, 29 N. W. 570, 889; *McCormick v. Herndon,* 86 Wis. 449, 56 N. W. 1097; *Schierl v. Newburg,* 102 Wis. 552, 78 N. W. 761; *Cumps v. Kiyo,* 104 Wis. 656, 80 N. W. 937.

In the majority of instances here and elsewhere, which have been reported in the published reports, where the rule permitting admission of parol evidence to show that an instrument purporting on its face to be an absolute deed or bill of sale, to have been intended by the parties thereto to be a mortgage, the law in that regard was applied in cases formerly cognizable only in courts of equity and expressions were used well calculated to mislead one stopping short of a thorough study of the subject into the belief that a court of equity only can give effect to the true purpose of the instrument. The contrary has been established here by a long line of decisions. The following are but a few of them: *Kent v. Agard,* 24 Wis. 378; *Andrews v. Jenkins,* 39 Wis. 476; *Brinkman v. Jones,* 44 Wis. 498; *Howe v. Carpenter,* 49 Wis. 697, 6 N. W. 357; *Dobbs v. Kellogg,* 53 Wis. 448, 10 N. W. 623; *Manufacturers' Bank v. Rugee,* 59 Wis. 221, 18 N. W. 251; *Lamson v. Moffat,* 61 Wis. 153, 21 N. W. 62; *Gettelman v. Commercial Union Assur. Co.* 97 Wis. 237, 72 N. W. 627; *McCormick v. Herndon, supra; Jordan v. Estate of Warner,* 107 Wis. 539, 550, 83 N. W. 946.

In *Howe v. Carpenter, supra,* the court laid down the rule thus:

Under the repeated decisions of this court . . . it is held that . . . no matter what the nature of the conveyance may be, which is given . . . as security . . . when the evidence, either written or parol, establishes the fact that the relation of mortgagor and mortgagee exists between the parties, the right of the former is limited to a mere mortgage interest.

In *Kent v. Agard, supra,* the point was made that equity jurisdiction only was competent to give effect to a written instrument as a mortgage contrary to its letter, and the court speaking by Mr. Justice PAINE said: "I see no reason why" the real character of the instrument intended as a mortgage cannot be shown regardless of its letter "in an action to recover possession of real estate. When the facts are proved, such a deed is a mortgage only, both at law and in equity. The rights of the mortgagor and mortgagee are precisely the same as though the defeasance were contained in the deed itself. The only difference is in the manner of proving the defeasance."

There are authorities, it is true, making a distinction in regard to the rule under discussion as between a conveyance of land and one of personalty, but no such distinction is recognized here (*Manufacturers' Bank v. Rugee, supra*), nor by courts generally. Herman, Chattel Mortgages, § 21, and cases cited in the note.

It should be said, perhaps, that there is ample authority sustaining the general proposition contended for by counsel for appellant. See Jones, Chattel Mortgages (4th ed.) § 21; 20 Am. & Eng. Ency. of Law (2d ed.) 935–949. But the contrary has so long prevailed here and has been so frequently and so recently treated at length in our decisions that there is little need of going astray in respect to the matter. In *Jordan v. Estate of Warner, supra,* the subject was treated thus:

"The great weight of authority in this country, where the subject is not regulated by statute, including that of the su-

preme court of the United States, is that, whatever form a conveyance of real estate may take, it may be shown in equity, by parol, to be a mortgage, if that was its purpose in fact; and in Code states, where what were formerly actions at law and suits in equity are triable in the same court, the distinctions between them having been abolished, the true character of a conveyance, absolute in form, given as a mortgage, may be shown by evidence *aliunde,* including parol evidence, whether the question be raised by a direct action for equitable relief or be incidental to legal relief. . . . An examination of [the cases decided by this court] will show that no discrimination is made between legal and equitable actions as to the jurisdiction of the court."

The doctrine that the giving effect to an instrument according to the intention of the parties thereto, which in form is an absolute conveyance, though intended as security, is a subject of equitable cognizance only, originated in the supposed difficulty of dealing in courts of law with the matter, because of the statute of frauds and the rule that a written instrument cannot be contradicted or varied by parol. Equity courts dealt with the matter upon various pretexts common to such jurisdictions, viz.: that a defeasance was omitted by fraud or mistake or mutual confidence and that proof of the real nature of the transaction was necessary to prevent fraud; that in such cases neither the statute of frauds nor the rule against varying a written instrument by parol stood in the way. In some legal opinions expressions may be found which might well lead one to suppose that the doctrine permitting parol evidence regardless of the forum or form of action in such cases is a partial abrogation of one of the most familiar and important rules of evidence. Such expressions are unfortunate and misleading. This court in speaking on that subject in *Jordan v. Estate of Warner, supra,* said:

"The rule is not inconsistent with the statute of frauds nor the principle that a written contract cannot be varied by parol; though statements to the contrary are sometimes found in the books, including some of the decisions of this court.

It recognizes and gives effect to two very familiar elementary principles of evidence, namely, parol evidence may be resorted to to prevent the inequitable or fraudulent use of a written instrument; and, a written instrument, made in part execution of an entire verbal contract and covering some essential part of it, does not preclude showing the entire contract by a resort to parol evidence."

That is the only logical basis for treating, by the aid of parol evidence, an instrument according to the purpose mutually intended regardless of the letter of the paper. It is confusing to read commonly in legal opinions that a written contract cannot be varied or contradicted by parol evidence, and to read in exceptional instances the contrary, the conflicting expressions being made without such qualifications as to indicate clearly the sense in which they were intended. Where ambiguity in a contract exists, which is developed by applying the paper to the subject dealt with, proof of the circumstances under which it was made to enable the court to construe it as the parties intended, or proof by parol of that part of an entire contract which in partial execution was in the other features reduced to writing, should not be denominated variances or contradictions of the agreement. Construction often involves variation or contradiction of the strict letter, but not of the real contract itself, as expressed in the paper when viewed in the light of all the circumstances of its origin. The words "varied or contradicted" in the treatment of this subject in *Lippincott v. Lawrie,* 119 Wis. 573, 97 N. W. 179, referred to the letter of the contract not to the meaning thereof reasonably determinable therefrom in the light of all the facts.

The court after stating the claim of the plaintiffs, that *John Pfluger,* in the transaction whereby he acquired the property described in the bill of sale, agreed to pay therefor by paying certain specified debts of Peter's, including that of Smith & Johnson, and that there was evidence to the effect that $1,500 was borrowed of the German American Bank by aid of the Brewing Company for *John Pfluger's* use in carry-

ing out his agreement and that so much thereof was so used
as was required to pay such debts, with the exception of Smith
& Johnson's,—said to the jury, following a recital of the par-
ticular debts of Peter's that were paid:

"This makes something like, according to his (Peter's) tes-
timony, $885, which he (*John*) paid at that time. Now it
comes down to this: . . . Peter Pfluger insists and main-
tains . . . that it was his understanding that the debts were
to be paid, not only the debts that were paid at that time, but
also this debt of $643.65 to Smith & Johnson." (The words
"at that time" clearly refer to the time when the transaction
was closed up,—the time when the debts to other creditors
were paid.) "Now if that was the understanding between
Peter Pfluger and *John Pfluger* at the time this was closed
up, or at any time during these transactions, . . . it is for
you to consider and determine, under all the evidence, whether
it was understood and agreed that he should pay Smith &
Johnson's debts as well as the others, which he did pay."
(The jury must have understood that it was for them to de-
termine whether, as Peter testified, when the trade was closed
up and his other debts mentioned were paid by *John,* it was
understood and agreed that Smith & Johnson's debt should
also be paid.)

Immediately following the quoted words the court said:
"Now if that was the understanding of the parties at the time,
then the plaintiffs are entitled to recover." It is contended on
behalf of appellant that the jury were thus permitted to find
in respondents' favor, if there was any understanding at any
time during the transactions resulting in *John Pfluger* acquir-
ing the property, even though it was superseded by an agree-
ment with the Brewing Company in the end.

The charge is by no means a model of clearness. It is
justly criticised by counsel for appellant. Yet it seems that
the court intended to have the jury understand that if, as tes-
tified to by Peter Pfluger, at the time the property was deliv-
ered to *John Pfluger* the latter agreed to pay therefor in part
by paying certain debts of Peter's, including one to Smith &
Johnson, they were entitled to recover. In all reasonable

probability the jury so understood the court. The words "at that time" in all reason go back to the same words in the statement by the court of Peter's evidence, which unmistakably refer to the closing up of the deal when certain debts of Peter's were paid. The word "understood" used in the charge in connection with "agreed" and sometimes not, clearly referred to the understood conditions of the sale by Peter—in form to the Brewing Company, but in effect to *John*—forming a part of the transactions between them, leading up to and affecting the final close, whether specifically mentioned at the end or not.

Error is assigned because the court left it to the jury to determine whether *John* bought the property or not. We do not see that clearly. The jury were instructed that whether *John* bought the property for $1,400 or $1,500 made no difference if he agreed to pay the Smith & Johnson claim on account thereof. There was no question for the jury as to whether "*John* bought the property or not," as counsel for appellant suggests. Not because the bill of sale on its face shows that the transfer was to the Brewing Company, however, but because the conceded evidentiary facts show beyond controversy that the sale was to *John,* and that the transfer to the Brewing Company was a mortgage.

It is contended that the court erred in instructing the jury that a mere oral promise on the part of appellant to pay Peter's debts, under the circumstances, was binding. It is argued that there can be no binding contract in such circumstances without all the elements of novation being present, viz.:—as applied here—a debt from Peter to Smith & Johnson, a debt from *John* to Peter, and an agreement between the three whereby Smith & Johnson released Peter and took *John* in his stead in consideration of the latter's agreement to pay Peter's debt to them. It does not seem necessary to discuss at length the doctrine of novation, which is invited by the learned counsel's somewhat extended treatment of the matter.

Counsel on both sides, as suggested on the oral argument, misconceived the law applicable to the case in giving so much attention to the subject of novation. There is little need, it would seem, for confusing such subject with that of an agreement by one person with another for the benefit of a third. Such an agreement is binding regardless of the relations between such other and the third person, and of whether such other was a party to, or had knowledge of, the agreement when made or of the continuing existence of the indebtedness of such person to such other, if such indebtedness is a circumstance of the transaction. Upon the making of an agreement between such person and such other the law operating upon the acts of the parties creates the essential of privity between such other and the third person, necessary to a binding contract between them. The law on this matter has been so fully discussed in recent years that it would be a work of supererogation to go over the matter again. The doctrine is firmly established here, as concisely stated in the syllabus of the decision in *Tweeddale v. Tweeddale,* 116 Wis. 517, 93 N. W. 440:

"If a person makes a contract with another for the benefit of a third person, the latter may enforce it at law regardless of his relations with the first person or whether he had any knowledge of the transaction between such person and such other at the time of its occurrence, and regardless of any formal assent thereto on his part prior to the commencement of the action."

The law, as above indicated, was fairly stated by the trial court to the jury. The misconception of it on the part of counsel for appellant seems to be at the foundation of the assignments of error chiefly relied upon. We are unable to discover any harmful error in the record.

*By the Court.*—The judgment is affirmed.