Young and another, Appellants, vs. Miner and others, Respondents.

*January 13—February 1, 1910.*

(1–3, 8) *Trial: Findings: Duty of trial judge: Appeal: Review in absence of findings: New trial.* (4–7) *Mortgages: Release of equity of redemption: Validity: Intention: Consideration: Evidence: Estoppel as to third persons.*

1. Under sec. 2863, Stats. (1898), the trial judge is required to make a finding upon each controverted issue of fact and also to state his specific conclusions of law thereon from which the ultimate judgment results.

2. A finding that at the commencement of the action plaintiffs had no right, title, or interest in the land described in the complaint, is not a finding of fact.

3. Although, because of the failure to make proper findings, the ground upon which the trial court based its judgment is left to conjecture, yet the supreme court will examine the evidence to

ascertain whether a fair preponderance thereof supports such judgment or would support a judgment the other way, or whether a new trial is necessary to a just determination of the rights of the parties.

4. In order to support a transfer of mortgaged land by the mortgagor to the mortgagee, terminating the right of redemption, it must be clearly shown that the conveyance or release was voluntary on the part of the mortgagor, was based upon an adequate consideration, was untainted by fraud, and that no advantage was taken of the debtor's necessities to drive a hard bargain.

5. The evidence in this case is *held* insufficient to show that by such a transfer the mortgagors intended to release all equity of redemption, or that the transfer was voluntary on their part.

6. Such a transfer, by embarrassed mortgagors to the mortgagee, of land worth from $2,000 to $3,000 for no consideration except the mortgage debt and some trifling additions, aggregating $900, cannot be sustained.

7. An estoppel as against the mortgagors making such a transfer to the mortgagee, in favor of a third person claiming title under such mortgagee, is not established by evidence which fails to show that the conveyance to such person was based upon a valuable consideration or even that he was ignorant of the mortgagors' rights.

9. In an action tried by the court in which there are no findings of fact upon the controverted issues and the record does not support the judgment for defendant but shows an incomplete trial and many things necessary of explanation to enable the court to do justice between the parties, the judgment will be reversed and the cause remanded for a new trial.

APPEAL from a judgment of the circuit court for Richland county: GEORGE CLEMENTSON, Circuit Judge. *Reversed.*

Action to redeem from a mortgage the south half of the southeast quarter of section 21, township 10, range 1 west, in Richland county, Wisconsin. It appeared that in 1895, 160 acres of land, including the above description, had by several heirs been transferred to one of them, namely, Jesse Young, under a family arrangement. He, on December 26, 1895, executed a mortgage thereon to J. W. Lybrand for $650, and immediately deeded the south half of the southeast quarter of the section to the plaintiffs, his brothers, subject to said mortgage and upon their agreement to support their mother, who

died in 1897. It is claimed that there was a verbal under-
standing that $300 of the mortgage should be assumed by the
plaintiffs and the rest should be taken care of by Jesse. A
few partial payments of interest were made from time to time
until February 25, 1899. Jesse Young and the plaintiffs
had made an additional mortgage to one Hallin for $94.47
which on February 9, 1898, had been transferred to J. W. Ly-
brand, and Jesse Young had transferred the north half of the
160 acres to a brother-in-law, Jasper Haller.

On February 25, 1899, Jasper Haller and the plaintiffs
executed and delivered deed to J. W. Lybrand of all the
premises, which the plaintiffs claim was not effectual to ex-
tinguish the equity of redemption, and the defendants claim
was so effectual, and that it was based upon the discharge of
the $650, the payment of the John Hallin mortgage, with in-
terest, and the payment of a small judgment against the
Youngs, all amounting to about $900 at date of said deed.
Much evidence was offered as to this transaction and as to the
subsequent conduct of the parties. Confessedly the plaintiffs
remained in possession until some time in 1905, when they
were evicted by some irregular process; also that they made
some payments of what the plaintiffs call interest and the de-
fendants now call rent. At the time of the deed to Lybrand
there was an agreement entered into that the grantors might
retain possession for the balance of the year 1899 upon pay-
ment of interest and taxes for that year, and a lease was made
to Haller of the entire premises commencing January 1,
1900, in which the rent confessedly was the computed amount
of the interest on $913, to wit, $64. J. W. Lybrand died
soon after, and an undivided half of this property was con-
veyed by his son, R. C. Lybrand, to the former's daughter,
*Nellie Miner,* by warranty deed, on July 8, 1901. The deed
is not in evidence and there is no proof as to the consideration.
*Nellie Miner* conveyed the south half of the southeast quarter
to *James Shannon* by warranty deed on October 2, 1907.

After completion of plaintiffs' evidence, and one witness had been sworn and testified on behalf of the defendants to the circumstances attending the making of the deed in 1899, the court announced himself satisfied, stopped the taking of further evidence, made so-called findings merely to the effect that the deed to Lybrand was executed and that at the time of the commencement of this action the plaintiffs had no right, title, or interest in the premises, upon which judgment dismissing the complaint was entered, from which the plaintiffs appeal.

*A. C. Vaughan,* for the appellants.

*L. H. Bancroft,* for the respondents.

Dodge, J. The confusion of this case, from the multitudinous irregularities and errors of practice on the trial, in the preparation of the record for appeal, and in the printed case, are such that we have, most improperly, been driven to the necessity of examining, by consent of counsel, the original reporter's minutes and a mass of exhibits supposed to have been admitted in evidence but in no wise embodied in the bill of exceptions. The effect of such confusion is enhanced by the fact that the trial judge has failed of compliance with the requirement of sec. 2863, Stats. (1898), that he state in his written decision the facts found by him and his conclusion of law thereon. This duty has been the subject of frequent comment, explanation, and definition by this court, the result of which is that a trial judge is required to declare his conclusion upon each of the controverted issues of fact and also his specific conclusions of law thereon from which the ultimate judgment results. We commend the following cases to the attention both of judges and of counsel who, in the sustainment of judgments which they secure, may be seriously prejudiced by the omission of such findings as the statute commands: *Brown v. Griswold,* 109 Wis. 275, 85 N. W. 363; *Milwaukee Nat. Bank v. Gallun,* 116 Wis. 74, 92 N. W. 567;

*Farmer v. St. Croix P. Co.* 117 Wis. 76, 93 N. W. 830; *Chippewa B. Co. v. Durand,* 122 Wis. 85, 99 N. W. 603; *McKenzie v. Haines,* 123 Wis. 557, 562, 102 N. W. 33; *Sliter v. Carpenter,* 123 Wis. 578, 582, 102 N. W. 27; *McDougald v. New Richmond R. M. Co.* 125 Wis. 121, 103 N. W. 244; *Closuit v. John Arpin L. Co.* 130 Wis. 258, 110 N. W. 222.

The controverted issues in this case were: (1) Whether the plaintiffs physically executed the deed upon which defendants rely; (2) whether, if so, the intention of the parties was that a complete release and transfer of the equity of redemption should take place, or whether the parties contemplated a continuance of the former situation, namely, that the property should still be held as security redeemable by the mortgagor; (3) whether, if intended as an absolute conveyance, it was (a) voluntary on the part of the mortgagor; (b) based on an adequate consideration; (c) untainted by fraud; and (d) with no advantage taken of the debtor's necessities by driving a hard bargain; (4) whether the defendant *Nellie Miner* was an innocent purchaser without notice relying on the record title; (5) whether the defendants *Shannon* were such purchasers; and (6) whether the plaintiffs were estopped by certain eviction proceedings. On no one of these issues, except the first, are we informed by the findings of the judge's conclusion of fact, nor which of such facts justified a conclusion of law supporting the judgment rendered. The so-called findings, after declaring the execution of two certain deeds, one of which was undisputed, and the other was the deed from plaintiffs and Haller to Lybrand in 1899, declare only that "at the commencement of this action the plaintiffs nor either of them had any right, title, or interest in the lands described in the complaint." This is of course not a finding of fact, but a conclusion of law from some other facts. Whether such absence of title resulted from the deed to Lybrand, from rights of one or other of the defendants as an innocent purchaser, or from some judgment estoppel against the plaintiffs,

is left to mere conjecture.    The judgment, therefore, is per-- meated by error, and yet in the anxiety that justice may be done as speedily as possible, we should under the view sug- gested in *Brown v. Griswold, supra,* ascertain whether it is supported by a fair preponderance of the evidence or whether such fair preponderance of the evidence supports a judgment the other way, unless the whole record leaves us in such doubt as to justify serious apprehension of possible injustice from an attempt to ascertain the real rights of the parties from an inadequate and imperfect trial, unaided by any intelligible decision of the trial judge thereon.    We proceed, therefore, to an examination of the evidence.

We probably should not be able to say, as against a distinct finding that plaintiffs physically executed the deed, that any clear preponderance of evidence sufficient to overcome it ap- pears.    When, however, we come to consider the intention of the parties in making such a deed there is much very per- suasive evidence in favor of the claim of the plaintiffs that the deed was not intended to presently terminate the relation of mortgagor and mortgagee.    The plaintiffs all testified that only a mere contract was intended, and the only plaintiff hav- ing direct negotiation with the agent of Lybrand testifies that it was made merely to enhance his security and avoid the ex- penses of foreclosure and define his right to possession. When we turn to the testimony of that agent of Lybrand we find that, while he asserts that the plaintiffs fully understood that it was a deed, still that it was made to avoid expense of foreclosure proceedings, and that it was agreed at the time that no change in the possession should take place till nearly a year later, at which time the grantors were to have an option to acquire or retain the property by paying a sum exactly equal to the debt and were to pay "interest" to the end of the year.    There was also a promise of a lease after the first year had terminated at a rate of rental ascertained as the amount of the annual interest at seven per cent. on the sum so found

to be due. There is no testimony that the evidences of indebtedness were surrendered at the time of the making of the deed, and the record discloses that the written releases of the mortgages were not made until some months later. Such a state of facts points strongly to a mutual understanding that the relations theretofore existing of ownership on one hand and security on the other for a debt which drew interest were not presently terminated. It must also not be forgotten in that connection that the lay mind, even one so trained as that of the country banker, Pier, does not always accurately distinguish between transfer of title and record evidence of ostensible transfer which is practically tantamount to title for the purpose of sale and conveyance. Doubtless Pier, the agent, intended to take and record such a deed as would enable Lybrand to sell and convey without the expense of foreclosure, at least to an innocent holder, but whether his thought went further than that is by no means clear in light of the authorities, to which we shall subsequently refer.

If, however, we assume the intention of the parties to have been a release of all equity of redemption, there arises the question whether the plan was voluntary with the debtor, or whether it was the result of pressure or coercion following from inability to presently pay, and the threatened probability of foreclosure proceedings, with consequent enhancement of the debt. It is disclosed by the testimony of Pier that the plan of conveyance or surrender of the land did not originate with the plaintiffs or with Lybrand; that they had at all times been struggling to meet their payments of interest; that Pier insisted either on payment of all interest, including the arrears, or that they convey the property or submit to foreclosure, insisting to them that their conveyance would relieve both parties from the expenses of foreclosure and be no detriment to them, because their equity, though perhaps of some value, would be eaten up by another year's interest and expenses of foreclosure.

Further than this, however, is the query whether such transaction was upon adequate consideration, fair, and not suggestive of a taking advantage of the situation of an embarrassed debtor to drive a hard bargain, which, it is said in *Lynch v. Ryan,* 132 Wis. 271, 111 N. W. 707, 112 N. W. 427, must be made to clearly appear. As to the consideration, it is asserted by respondents that, in addition to Lybrand's mortgage of $650 and accumulated interest, Lybrand paid off a mortgage to one Hallin amounting with accrued interest to $120, and that he paid some judgment against some one for $20. But it appears by documentary evidence introduced that he did not pay at the time of, and as a consideration for, this conveyance, the Hallin mortgage. That mortgage was assigned to him by written instrument dated more than a year before the deed transaction, and therefore was at most merely a part of the mortgage debt and not a new and additional consideration from grantee to grantor, at least so far as appears by the present evidence. Indeed, as previously stated, there is no evidence that either that debt or the original mortgage debt of $650 was satisfied at the time of the deed. But if that fact be assumed, the total of consideration was barely $900. The evidence at present in the record seems overwhelming that the real estate conveyed was of far greater value. Witness after witness, of apparently most respectable character and well qualified to judge as to farm values, neighbors owning land, many of whom had been town officers, assessors, or the like, testified to values in 1899 ranging from $2,000 to $4,000, and most of them supporting a value of over $3,000. Against this there is no particle of evidence except that of Mr. Pier, probably an entirely honest but yet prejudiced witness, that in 1895, at the time the Lybrand mortgage was taken, he placed a value of $1,200 on the land as a conservative estimate on which to loan money. It is in evidence that such lands as those involved have enhanced rapidly in value since the depression following the panic in

1893, which, as is matter of common knowledge, was most acute about 1895, at the time Pier examined and valued the land.    Much land in this state advanced greatly in value between the years 1895 and 1899.    Therefore the testimony of Pier is hardly in conflict with that offered by the plaintiffs. In the light of the authorities to which we shall shortly refer, we think no court could justify the transaction of inducing an embarrassed mortgagor to convey the mortgaged premises of value $2,000 or $3,000 to the mortgagee for no consideration but the mortgage debt and some trifle in addition thereto, aggregating $900.

The rules of law governing the relations between mortgagor and mortgagee with reference to acquisition of mortgaged land by the latter have been long settled and were last announced by this court in *Lynch v. Ryan, supra,* where it was said that in order to support such a transfer and terminate the pre-existing right of redemption by payment of the debt, "it must be clearly shown that the conveyance or release was voluntary on the part of the mortgagor, was based upon an adequate consideration, was untainted by fraud, and that no advantage was taken of the debtor's necessities to drive a hard bargain. . . . In doubtful cases the courts incline to hold that the mortgage relation still exists."    The reason of this rule is obvious.    When one gives a lien upon his land to another as security for a debt, public policy does not permit him in advance to agree to any forfeiture of his right of redemption otherwise than in the manner prescribed by statute, namely, that of a judgment declaring the amount due and, after a year for redemption, directing the premises to be sold to raise the money due to pay such debt.    The creditor's right is to his money, not to the land.    But, in common experience, the man reduced to the necessity of borrowing money upon mortgage security is often, if not commonly, in a situation where oppression is easy, and where a serious temptation is offered to the mortgage creditor to avail himself of the oppor-

tunity to secure the entire land without according the protection of a public sale to assure an adequate price. The rule tersely stated in *Lynch v. Ryan* is supported by many decided cases in Wisconsin, a few of which here cited present situations of much analogy to that disclosed by the present record. *Rockwell v. Humphrey,* 57 Wis. 410, 15 N. W. 394; *Hunter v. Maanum,* 78 Wis. 656, 48 N. W. 51; *Schierl v. Newburg,* 102 Wis. 552, 556, 78 N. W. 761. The result is that we fail to find any preponderance of evidence to prove the elements essential to the validity and effectiveness of the deed. Indeed, we are clear that the present evidence discloses a lack of adequate consideration and complete fairness.

We are unable to find any evidence to establish estoppel against the plaintiffs in the case of *Nellie Miner.* Her title to an undivided half of the land appears to have come by descent from J. W. Lybrand, so that her title could be no better than his. As to the other half, it came to her by conveyance from her brother, but there is no evidence as to whether such conveyance was based upon a valuable consideration or whether she even claims ignorance of the plaintiffs' rights in the land. It does appear, however, that at the time of her deed the plaintiffs were in open and notorious possession of the premises. As to *Shannon,* there is also entire absence of evidence as to the good faith of his purchase or as to any valuable consideration; while it also appears that he was a neighbor living in the vicinity, from which is inferable his knowledge of the possession and occupation of the premises by the plaintiffs while it continued. True, it also appears that at the time of his deed they had been evicted by some process claimed to be invalid. The circumstances of that eviction, which is claimed to have been under judicial process, are not at all shown by any of the evidence before us so that it can be determined whether there has been any adjudication sufficient to estop the plaintiffs from setting up their title.

However, we do not feel that it would be safe to render a

judgment either for plaintiffs or defendants upon the very
irregular trial. While the present record would seem pretty
clearly insufficient to support the judgment for the defend-
ants, yet it discloses that as soon as one witness had testified
for the defense, namely, Mr. Pier, the court interposed and
refused to hear any further evidence on defendants' part and,
inferentially, any evidence in rebuttal. There are many
things which are at least possible of explanation upon one side
or the other and as to which explanation seems necessary to
the ascertainment of rights and rendition of complete justice.
We therefore deem it our duty to remand for a new trial.

*By the Court.*—Judgment reversed and cause remanded
for new trial. No costs will be allowed for printing case.